UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ANDREW HESS,<br><br>    Plaintiff,<br><br>    v.<br><br>OAKLAND COUNTY, MICHIGAN; KAREN McDONALD, Oakland County Prosecutor, Oakland County, Michigan; JOE ROZELL, Director of Elections, Oakland County, Michigan; MICHAEL J. BOUCHARD, Oakland County Sheriff, Oakland County, Michigan; and MATTHEW PESCHKE, Sergeant, Oakland County Sheriff's Office, Oakland County, Michigan,<br><br>    Defendants. | No.<br><br>**COMPLAINT**<br><br>[Demand for Jury Trial] |

Plaintiff Andrew Hess ("Plaintiff"), by and through undersigned counsel, brings this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof alleges the following upon information and belief:

**INTRODUCTION**

1.    The weaponization and abuse of government power to attack and silent political opponents must stop.  For nearly a year, Plaintiff Hess has been subject to a patently unconstitutional prosecution, causing the deprivation of his fundamental rights.  Plaintiff has been defamed, and he and his family have suffered great pain,

- 1 -

emotional distress, and financial harm as a result of this politicized and unlawful prosecution brought against him by Oakland County officials.

2.     Plaintiff seeks a declaration that Defendants violated his clearly established constitutional rights as set forth in this Complaint; a declaration that Defendant Rozell defamed him under Michigan law; a declaration that Michigan Compiled Laws § 750.543m, the criminal statute that served as the basis for this unlawful prosecution, is unconstitutional facially and as applied; an injunction enjoining the enforcement of Michigan Compiled Laws § 750.543m, facially and as applied; and an award of nominal, compensatory, and punitive damages.  Plaintiff also seeks an award of his reasonable costs of litigation, including attorneys' fees and expenses.

## JURISDICTION AND VENUE

3.     This action arises under the First, Second, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Michigan constitutional and statutory law.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over the state law claims in this case pursuant to 28 U.S.C. § 1367(a).

4.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

5.      Plaintiff's claim for damages is made pursuant to 42 U.S.C. § 1983, and other applicable law, including Michigan Compiled Laws § 600.2911.

6.      Plaintiff's request for an award of his reasonable attorney fees, costs, and expenses is authorized by 42 U.S.C. § 1988, Michigan Compiled Laws § 600.2911, and other applicable law.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

8.      Plaintiff Andrew Hess is an adult citizen of the United States.  Plaintiff is married, and he and his wife have four young children.  They reside together in Livonia, Michigan.

9.      Defendant Oakland County is a municipal entity organized and existing under the laws of the State of Michigan.  It is a municipal corporation with the right to sue and be sued.

10.     Defendant Karen McDonald is the Oakland County Prosecutor, and she was the authorized decision maker for Oakland County to pursue the unlawful and politicized prosecution of Plaintiff.   Defendant McDonald possesses final policymaking authority to decide whom to prosecute.

11.     Defendant Joe Rozell is the Director of Elections for Oakland County. He defamed Plaintiff, and he conspired and worked jointly with the Oakland County

Prosecutor to pursue the unlawful and politicized prosecution of Plaintiff.

12.　Defendant Michael J. Bouchard is the Oakland County Sheriff.  He, through his Office, recommended prosecution of Plaintiff, and he conspired and worked jointly with the Oakland County Prosecutor to pursue the unlawful and politicized prosecution of Plaintiff.  Defendant Bouchard is also responsible for the Oakland County Jail.

13.　Defendant Matthew Peschke is a sergeant with the Oakland County Sheriff's Office.  He was the lead investigator of Plaintiff for Oakland County, and he conspired and worked jointly with the Oakland County Prosecutor to pursue the unlawful and politicized prosecution of Plaintiff.

14.　Defendant Oakland County's decisions, laws, policies, practices, customs, and/or procedures were the moving force behind the constitutional violations set forth in this Complaint.

15.　At all relevant times, Defendant Oakland County trained, supervised, and employed Defendants McDonald, Rozell, Bouchard, and Peschke.

16.　Defendant Oakland County's deficient training and supervision of Defendants were done with deliberate indifference as to their known or obvious consequences and were a moving force behind the actions that deprived Plaintiff of his fundamental constitutional rights as set forth in this Complaint.

## STATEMENT OF FACTS

17.     On December 15, 2023, a recount of an election that occurred in November 2023 in Oakland County ("County") was held at the Election Division Training Room ("Recount Room") inside the County Courthouse.  Defendant Rozell, the Director of Elections for the County, was overseeing the recount. Deputies from the County Sheriff's Office were present to provide security.  Several members of the public attended as observers.  Plaintiff was present, and he was a designated poll challenger.

18.     At times, the recount became heated as some of the observers and challengers complained that cheating was taking place.  In fact, challenges were filed to the ongoing process.  Plaintiff was one of the challengers, complaining about the fact that seals on the ballot bags appeared to be tampered with, calling into question the chain of custody for the ballots.

19.     At one point, Plaintiff departed the Recount Room and went out into the lobby.  And while in the lobby, which was largely empty, a receptionist for the County, Kaitlyn Howard, allegedly overheard Plaintiff state, "Hang Joe for treason." The statement was made in conversational tone, and Ms. Howard was admittedly not an intended party to this conversation.  No other witness came forward regarding the making of this alleged "terrorist threat."  Neither Defendant Rozell nor any other election official was in the lobby at the time.  Defendant Rozell never heard this

alleged statement from Plaintiff.

20.    Ms. Howard eventually reported the alleged "threat" to the County deputies, who then proceeded to ask Plaintiff to exit the Recount Room for questioning.  Plaintiff willingly complied.

21.    During this questioning, Plaintiff made clear to the County deputy, as evidenced in the case report, that "all [Plaintiff] did was accuse [Defendant Rozell] of a crime, and it would be like saying [if] somebody murdered someone they go to jail for the rest of their life."  This interview was recorded by the deputy's body camera.  Plaintiff also told the deputy on video that "I didn't make a threat," and he is heard on the body camera video telling another person that he denied making a threat and that "I said I accused him of a crime."  In the written statement Plaintiff provided to the deputy during this questioning, Plaintiff emphatically stated, "I never threatened the life of Joe."

22.    Following this questioning, Plaintiff was permitted to reenter the Recount Room where Defendant Rozell and the other election officials were located. Plaintiff was not arrested, searched, or detained, nor was he told to leave the recount. The building wasn't evacuated or searched.  Reinforcements were not called.  No "terrorist threat" protocols or immediate actions were employed.  And no special security detail was provided for Defendant Rozell.  Nothing.  In other words, *no one* perceived or understood there to be any threat of terrorism that day or that Plaintiff

posed any threat to anyone, including Defendant Rozell.

23.     During the public comment period, Plaintiff proceeded to make a speech about cheating on elections, and he expressed the opinion, which is core political speech protected by the First Amendment, that people who cheat on elections should be prosecuted for treason.  In other words, Plaintiff confirmed everything that he had just told the deputy and that he put in his written statement. And the officials involved with the unlawful prosecution confirmed that nothing Plaintiff said during this public comment period served as a basis for the felony charge that was eventually brought against Plaintiff.

24.     During Plaintiff's speech, deputies stood by listening with their arms folded.  Below is a true and accurate picture showing Plaintiff making his comments during the public comment period while the deputies listened with their arms folded. Once again, this speech was made *after* Plaintiff was confronted by a deputy for allegedly making a "terrorist threat."  In sum, there <u>never</u> was any threat of terrorism.



25.     The deputies at the recount provided written statements confirming that they never heard Plaintiff making any threats, and they confirmed that Plaintiff was expressing the opinion that cheating on elections was treason.

26.     After making his public comments during the comment period, Plaintiff departed the County courthouse without incident.  He was not arrested nor detained, and the deputies never provided any personal security for Defendant Rozell because none was needed.

27.     Defendants Bouchard, McDonald, and Peschke had available for their review, and, in fact, did review before recommending and thus commencing the unlawful prosecution of Plaintiff all of this evidence, including the video of Plaintiff's interview and public comments, and they had access to the witnesses.

28.     Beginning in January 2024, media started to report, based on false statements by Defendant Rozell, that Plaintiff had personally threatened Defendant Rozell during the recount and that the Oakland County Prosecutor was looking into possibly prosecuting Plaintiff for his speech.

29.     On January 10, 2024, CBS News published false and defamatory statements made by Defendant Rozell about Plaintiff.  In this news story, Defendant Rozell claimed, on video, that he was "threatened by a man during a ballot recount." More specifically, Defendant Rozell was directly quoted (and appeared on video stating) as follows: "They were upset that we were advising the board how to

conduct the recount in accordance with the statute, and this individual didn't like that, and so *he said that he was going to hang me*." Defendant Rozell continued, "It was very unnerving. I felt threatened, concerned. And so, we did have sheriff's deputies here on the scene, and he was confronted and a report was taken by the sheriff's department." Defendant Rozell further stated, "When you come and *your goal is to intimidate and bully and threaten to harm the people who are doing these types of things, that's the wrong way to go about this, and it's a crime*." This news story was aired on television, and it is published online at https://www.cbsnews.com/detroit/news/oakland-county-director-of-elections-allegedly-threatened-by-man-during-a-ballot-recount/. Defendant Rozell's false and defamatory statements were about and concerning Plaintiff, they cast Plaintiff in a false light, and they were made with a reckless disregard for the truth.

30. Under Michigan law, "words imputing the commission of a criminal offense" are defamation *per se*. Mich. Comp. Laws § 600.2911(1). Defendant Rozell's false statements impute the commission of a criminal offense and are thus defamation *per se*.

31. Defendant Rozell's false statements harm the reputation of Plaintiff as to lower him in the estimation of the community and to deter others from associating or dealing with him.

32. Through the unlawful prosecution of Plaintiff, discussed in further

detail below, the Oakland County Prosecutor was seeking to promote the false political narrative that conservative Republicans, such as Plaintiff, are threatening the safety of our elections and election officials in order to adversely impact the election. In other words, this prosecution was designed and intended to chill the free speech rights of those who might complain about or question the integrity of the 2024 general election and the integrity of the actions of election officials. This unlawful prosecution was intended to chill political speech and to deter election observers and challengers from commenting upon or reporting potential election malfeasance committed by election officials during the general election.

33.    In an effort to prevent the initiation of such an unlawful and politicized prosecution, on January 16, 2024, Plaintiff, through counsel, sent a letter to the Oakland County Prosecutor, copying the Oakland County Sheriff and Defendant Rozell, warning them that pursuing such a prosecution was unlawful under the U.S. Constitution. A true and correct copy of this letter is attached to this Complaint as Exhibit 1.

34.    Unfortunately, Defendants Oakland County, McDonald, Bouchard, and Peschke failed to heed the warning. Instead, they pursued the unlawful prosecution of Plaintiff.

35.    In a press release issued on April 1, 2024, Defendant McDonald publicly announced that she "charged Andrew Fred Hess, a 37-year-old resident of

Livonia" with violating Michigan Compiled Laws § 750.543m for allegedly making a terrorist threat, noting that this is "a felony offense punishable by up to 20 years imprisonment and/or a fine up to $20,000."  Defendant McDonald further confirmed the politicization of this prosecution, stating, in reference to Plaintiff, that "there are individuals who seek to undermine the integrity of the election process by threatening and intimidating election workers and supervisors.  Those threats don't just impact our election workers, they put our democracy at risk, and they will not be tolerated. I will do everything within my power to hold those who make such threats accountable."  A true and correct copy of this press release is attached to this Complaint as Exhibit 2.

36.    Michigan Compiled Laws § 750.543m states that "[a] person is guilty of making a terrorist threat . . . if the person . . . [t]hreatens to commit an act of terrorism and communicates the threat to any other person."  Pursuant to this felony statute, an "[a]ct of terrorism' means a willful and deliberate act that is," *inter alia*, "[a]n act that is *intended* to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion."  Mich. Comp. Laws § 750.543b (emphasis added).  The statute also expressly provides that "a prosecuting agency *shall not* prosecute any person or seize any property for conduct *presumptively protected by the first amendment* to the constitution of the United States in a manner that violates any constitutional

- 11 -

provision."   Mich. Comp. Laws 750.543z (emphasis added).   In fact, to prevent criminal prosecutions such as the one advanced against Plaintiff, in August 2020, a jury instruction was adopted that specifically provides that to establish a violation of § 750.543m, "the prosecution *must prove* that the threat"

> must have been a true threat, and <u>*not have been*</u> something like idle talk, or a statement made in jest, <u>*or a political comment*</u>.  It must have been <u>*made under circumstances where a reasonable person would think that others may take the threat seriously as expressing an intent to inflict harm or damage*</u>.

Mich. Crim. JI 38.4(3) (emphasis added).

37.    Accordingly, Michigan Compiled Laws § 750.543m proscribes only those statements that communicate "a serious expression of an intent to commit an act of terrorism" and that are "*intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion*."   Thus, the statute requires the existence of an intent to intimidate or coerce the conduct of government when communicating the alleged threat, and it expressly prohibits a prosecutor from pursing charges against someone for engaging in speech "presumptively protected by the First Amendment," and this includes political comments or opinion, such as those expressed by Plaintiff during the recount.

38.    There was no basis in fact or law for Defendants Oakland County, McDonald, Bouchard, or Peschke to have initiated any criminal proceedings in this

case against Plaintiff nor for Defendant Rozell to claim that Plaintiff committed a crime.

39.    On April 4, 2024, Defendant Peschke appeared in the 50th District Court in Pontiac, Michigan, where he presented false and misleading testimony in order to secure a warrant for Plaintiff's arrest.  The presiding judge did not bother to ask any pointed or relevant questions to actually determine whether there was probable cause to arrest Plaintiff for allegedly making a terrorist threat in violation of § 750.543m.  Indeed, there was no probable cause, and this prosecution was barred by the First Amendment.  It was painfully evident that the judge knew nothing of the elements of the offense nor of the demands of the First Amendment.  Unfortunately, the judge simply rubberstamped the request and issued the warrant.

40.    Shockingly, Defendant Peschke provided the following sworn testimony, which contained material falsehoods and omissions of material facts, to the court in order to secure an arrest warrant for Plaintiff:

> Judge, on December 15, 2023, Sergeant VanCamp, Deputy Taliecio, Deputy Bramlett and Deputy Tovar were security for a recount of an election from November at 1200 North Telegraph in Pontiac.  The people came to observe the recount process and as the day went on, challenges were filed for ongoing issues with the process.  During that day, Sergeant VanCamp was approached by Katelyn Howard, an employee for the recount who told him that one of the members -- one of the meetings got heated and one of the men got up and loudly said to hang Joe for treason.  He then walked back into the room where the recount was being conducted.  The man was later identified as Andrew Hess.  Sergeant VanCamp had him step into the hall or the lobby with him and Sergeant VanCamp notified Hess that he had a report that he

stated that he was going to hang Joe Rozell for treason. Hess slightly nodded his head yes. Hess laughed and asked Sergeant VanCamp what the penalty for treason was, in which Sergeant VanCamp replied, hanging, and Sergeant VanCamp states that Hess smirked and nodded his head yes, and said so all's I did was accuse him of a crime and it would be like saying [if] somebody murdered someone they go to jail for the rest of their life.[1]

Mr. Hess was allowed to reenter the recount room. There was a break at 1:30. Mr. Hess did not return. Joe Rozell is the Huntington Woods City Commissioner and director of elections. I called him on January 9th and spoke with him over the phone. He advised me that he was present at the election recount at the 6th circuit court building on December 15th. Rozell advised that Andrew Hess made threats to hang him for treason and he also saw Andrew Hess point to him during public comment and heard him say that cheating elections is treason.

Joe Rozell states that he was in fear of Hess, and he was in fear of his life due to Hess's comments. This was submitted to the Oakland County Prosecutor's Office for threats. It was returned to me with a warrant for threats of terrorism from the Oakland County Sheriff's Office or the Oakland County Prosecutor's office.

41.    Based on this materially false statement, which itself does not establish probable cause for making a terrorist threat as a matter of law, a warrant issued for Plaintiff's arrest on April 4, 2024.

42.    As a result of this unlawful prosecution, Plaintiff was placed on a $20,000 personal recognizance bond, which deprived him of his liberty. The bond conditions included, *inter alia*, conditions that restricted his travel, mandated his appearance in court, and that deprived him of his fundamental right to bear arms

---

[1] Hess "laughed" and "smirked" because the suggestion that he threatened the life of anyone was patently absurd.

protected by the United States and Michigan Constitutions.  In fact, Plaintiff was ordered to surrender his CPL, which he did.

43.    Following his initial appearance, Plaintiff was ordered to go to the Oakland County Jail for fingerprinting, where he spent two hours in a jail cell while his family nervously waited in the parking lot for his release.

44.    Each time Plaintiff had to appear in court for this unlawful prosecution, he had to request time away from his employment.  Plaintiff works on commission only, so this prosecution caused a financial hardship for him and his family.

45.    During the preliminary examination on the felony charge, the prosecution presented two witnesses: Defendant Rozell and Kaitlyn Howard.  The district court judge denied Plaintiff's request to call as witnesses any of the deputy sheriff's present at the recount.  The Oakland County Circuit Court found that to be error and remanded the case for the taking of the deputies' testimony.  However, the district court dismissed the case prior to that happening.

46.    The deputy witnesses would have provided *further* evidence that there was no imminent threat to anyone and that no one present considered the alleged "threat" to be a "serious expression of an intent to commit an act of terrorism."  And Defendants knew that.

47.    During the preliminary examination, Defendant Rozell testified as follows:

Q.      *Sir, Mr. Hess **never told you directly that he was going to hang you, correct***?

A.      ***Correct***.

Q.      ***So those words were never personally communicated to you by Mr. Hess at any time***?

A.      ***Correct***.

Q.      *Mr. Hess never communicated to you the words, quote, "Hang Joe for treason," correct?*

A.      *Correct*.

Q.      These words, "Hang Joe for treason," are what Ms. Howard *claims she overheard Mr. Hess stating in the lobby*.  Are you aware of that?

A.      *Yes*.

Q.      And *you were not in the lobby to hear the words, quote, "Hang Joe for treason" that were allegedly uttered by Mr. Hess; is that correct*?

A.      *I was not in the lobby*.

Q.      *And at no time in the election recount room with you and the other election officials did Mr. Hess state, quote, "Hang Joe for treason;" is that correct?*

A.      Not that I recall, *correct*.

Q.      Okay.  At no time in the election recount room with you and the other election officials did Mr. Hess state, quote, "I'm going to hang Joe Rozell," end quote, correct?

A.      Correct.

Q.      ***At no time while in the election recount room with you and the other election officials did Mr. Hess state that he was going to hang anyone?***

A.      ***Not that I heard***.

48.     Defendant Rozell's sworn testimony demonstrates the falsity of the statements he made on camera to CBS and the materially false statements Defendant Peschke made to secure the warrant for Plaintiff's arrest.

49.     Ms. Howard, who works with Defendant Rozell, testified during the preliminary examination as follows:

Q.     And you made a statement, I believe it's approximately five lines long about what you had heard and saw, correct?

A.     Correct.

Q.     And you indicate that a person made a statement, "*Hang Joe for treason*."

A.     Correct.

* * * *

Q.     After hearing the statement and the response, what did you do?

A.     *Immediately, not much*. *I mean I couldn't leave my position at the front desk*. I was the only one guarding it, so I had to wait a little bit until I was able to go out into the lobby and find a deputy or someone I could report what I had heard to without disrupting the recount.

* * *

Q.     You actually waited a period of time before you even made the report to the law enforcement, correct?

A.     Correct.

Q.     *So you didn't perceive any imminent harm at that point, correct?*

A.     *Correct*.[2]

* * *

Q.     When Mr. Hess made the statement, quote, "Hang Joe for treason," per your testimony, *he wasn't having a conversation with you, correct*?

A.     *Correct*.

Q.     *You simply overheard that statement, correct?*

A.     *Correct*.

* * * *

Q.     And, to be clear, *Mr. Rozell was not in the lobby at all during the time when you heard this of this hang Joe for treason threat that you testified to, correct?*

A.     *Correct*. He was not in the lobby at that time.

Q.     *No member of the Board of Canvassers was there, as far as you recall?*

A.     *As far as I recall, no*.

* * * *

MR. HALL (the special prosecutor):  I'd stipulate that *it was a normal conversational tone*.

---

[2] Consequently, the *only* witness to the alleged "threat" didn't consider it to be a "serious expression of an intent" to commit harm.  Otherwise, she would have acted as such and immediately sought law enforcement assistance.

\* \* \*

Q.      And why did you feel the need to tell [the deputy]?
A.      Because personally from what I've experienced and what I've done, I – ***I don't take kindly to that kind of behavior or language***.

50.      The facts set forth in the testimony of Ms. Howard, the main witness for the prosecution, were available to Defendants Oakland County, McDonald, Bouchard, and Peschke prior to bringing the felony charge against Plaintiff, and this testimony further demonstrates the materially false statements and omissions Defendant Peschke made to secure the warrant for Plaintiff's arrest.

51.      It is factually and legally impossible, not to mention entirely absurd, to assert that an off-hand comment (which itself is political commentary and hyperbole and thus protected by the First Amendment) made in a nearly empty lobby that was simply overheard by a receptionist constitutes a "serious expression of an intent to commit an act of terrorism," which further requires an intent on the part of the speaker to "influence or affect the conduct of government or a unit of government through intimidation or coercion."  This prosecution of Plaintiff was a gross and illegal abuse of government power.

52.      Despite having all of these facts, including this sworn testimony from the government's own witnesses, following the preliminary examination, Defendants Oakland County and McDonald continued to pursue the unlawful prosecution of Plaintiff even after Plaintiff's counsel made repeated requests to the prosecutor to dismiss the charge.

- 18 -

53.     On February 13, 2025, the Michigan Court of Appeals held in a case brought by the Wayne County Prosecutor (and thus not this case involving Plaintiff) that Michigan Compiled Laws § 750.543m was facially unconstitutional based on *Counterman v. Colorado*, 600 U.S. 66 (2023).  As a result of this binding decision from the Michigan Court of Appeals, Plaintiff's counsel promptly filed a motion to dismiss the prosecution against Plaintiff.

54.     On March 6, 2025, the 50th District Court dismissed the case against Plaintiff, thus resolving the case in Plaintiff's favor.  Consequently, there are no ongoing state court proceedings against Plaintiff.

55.     The Wayne County Prosecutor is asking the Michigan Supreme Court to reverse the Michigan Court of Appeals.  Defendants Oakland County and McDonald vow to re-charge Plaintiff with this felony charge, which has a six-year statute of limitations, should the Michigan Supreme Court reverse the Michigan Court of Appeals.  Consequently, there is an ongoing injury and substantial risk of future injury such that the injury is redressable and the requested prospective relief is appropriate and necessary.

56.     Defendants' actions, as set forth in this Complaint, have caused, and will continue to cause, irreparable harm to Plaintiff.

57.     Defendants' actions, as set forth in this Complaint, have caused Plaintiff to suffer pain, humiliation, emotional distress, and financial loss.

58.    Plaintiff is a young father of four children.  The unlawful felony prosecution hung like a sword over his head and over the heads of his wife and young children for nearly a year.  Plaintiff's wife would often wake up in the morning in tears as she had a recurring nightmare of her husband being dragged off to jail.  This stress on Plaintiff's family resulted in a great deal of anxiety and emotional distress on Plaintiff.

59.    As a direct result of this unlawful prosecution, the Wayne County Clerk ordered Plaintiff to surrender his CPL, which he did.  Plaintiff's work often takes him into dangerous neighborhoods in Detroit and elsewhere.  Plaintiff concealed carry for personal protection.  As a result of this unlawful prosecution, Plaintiff couldn't conceal carry, thereby exposing him to danger.  Similarly, because of this unlawful prosecution, Plaintiff had to remove all weapons from his home, thus depriving him of his ability to protect his family.

60.    For Christmas in 2024, Plaintiff and his wife wanted to get a puppy for their children from a breeder in Indiana.  However, due to the travel restriction imposed at the time, Plaintiff was unable to travel out of state.

61.    When Plaintiff sought additional employment to help with the cost of Christmas for his family, he failed the background check because of this unlawful felony charge and prosecution.

62.    By unlawfully prosecuting someone for conduct "presumptively

protected by the First Amendment," as in this case, Defendants have chilled Plaintiff's fundamental right to freedom of speech, causing him to suffer further irreparable harm.

63.    This political prosecution of Plaintiff was an effort by Defendants to silence an election challenger, and it was part of a broader effort to intimidate and silence those who question the integrity of our elections.   Consequently, this prosecution was initiated for an unlawful purpose, and it sent a chilling message throughout the election integrity community, as Defendants intended.

### FIRST CLAIM FOR RELIEF
### (Freedom of Speech—First Amendment)

64.    Plaintiff hereby incorporates by reference all stated paragraphs.

65.    By reason of the aforementioned decisions, laws, policies, practices, procedures, customs, acts, and/or omissions, engaged in under color of state law, Defendants Oakland County, McDonald, Bouchard, and Peschke deprived Plaintiff of his right to freedom of speech by arresting, detaining, and prosecuting him for engaging in political speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

66.    Michigan Compiled Laws § 750.543m is unconstitutional facially and as applied to Plaintiff's conduct, specifically including his speech, at the Oakland County recount as set forth in this Complaint, and it causes a chilling effect on

- 21 -

political speech in violation of the Free Speech Clause of the First Amendment.

67.     On its face and as applied in this case, Michigan Compiled Laws §
750.543m is invalid under *Brandenburg v. Ohio*, 395 U.S. 444 (1969), *Watts v.
United States*, 394 U.S. 705 (1969), *NAACP v. Claiborne Hardware Co,* 458 U.S.
886, 913 (1982), *Virginia v. Black*, 538 U.S. 343 (2003), and *Counterman v.
Colorado*, 600 U.S. 66 (2023).

68.     The prosecution of Plaintiff as set forth in this Complaint also violates
state law.  Pursuant to Michigan Compiled Laws § 750.543z, "a prosecuting agency
*shall not* prosecute any person or seize any property for conduct presumptively
protected by the first amendment to the constitution of the United States in a manner
that violates any constitutional provision."  (emphasis added).  And in August 2020,
M. Crim. JI 38.4(3) was adopted, and it specifically provides that to prove the
offense at issue, "the prosecution *must prove* that the threat"

> must have been a true threat, and not have been something like idle talk,
> or a statement made in jest, *or a political comment.  It must have been
> made under circumstances where a reasonable person would think that
> others may take the threat seriously as expressing an intent to inflict
> harm or damage.*

69.     Defendants prosecuted Plaintiff based on the content and viewpoint of
his political speech, in violation of the Free Speech Clause of the First Amendment.

70.     Defendants' prosecution of Plaintiff, as set forth in this Complaint,
violated Plaintiff's right to freedom of speech protected by the Free Speech Clause

of the First Amendment.

71.     As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief and damages, including damages for pain, suffering, humiliation, and emotional distress.

## SECOND CLAIM FOR RELIEF
### (Malicious Prosecution—Fourth Amendment)

72.     Plaintiff hereby incorporates by reference all stated paragraphs.

73.     By reason of the aforementioned decisions, laws, policies, practices, procedures, customs, acts, and/or omissions, engaged in under color of state law, Defendants Oakland County, McDonald, Bouchard, and Peschke have violated the Fourth Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 by maliciously prosecuting Plaintiff.

74.     As set forth in this Complaint, Defendants made, influenced, or participated in the decision to prosecute Plaintiff; there was no probable cause for the prosecution; as a consequence of the legal proceedings, Plaintiff suffered a deprivation of liberty apart from the initial arrest; and the criminal proceeding was resolved in Plaintiff's favor, all in violation of the Fourth Amendment.

75.     As a direct and proximate result of Defendants' malicious prosecution

and violation of the Fourth Amendment, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief and damages, including damages for pain, suffering, humiliation, and emotional distress.

## THIRD CLAIM FOR RELIEF
### (Equal Protection—Fourteenth Amendment)

76.  Plaintiff hereby incorporates by reference all stated paragraphs.

77.  By reason of the aforementioned decisions, laws, policies, practices, procedures, customs, acts, and/or omissions, engaged in under color of state law, Defendants Oakland County, McDonald, Bouchard, and Peschke have deprived Plaintiff of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 by targeting Plaintiff for a vindictive and bad faith prosecution on account of Plaintiff's political speech.

78.  Selective prosecution claims are premised upon the denial of equal protection. Accordingly, Defendants' prosecution of Plaintiff deprived him of the equal protection guarantee of the Fourteenth Amendment.

79.  Defendants targeted and unlawfully prosecuted Plaintiff for engaging in political speech in violation of the Equal Protection Clause of the Fourteenth Amendment.

80.  Defendants' enforcement of Michigan Compiled Laws § 750.543m

against Plaintiff as set forth in this Complaint was arbitrary, capricious, discriminatory, and unreasonable in violation of the Equal Protection Clause of the Fourteenth Amendment.

81.     By punishing Plaintiff for political speech based on the content and viewpoint of the speech, Defendants have deprived Plaintiff of the equal protection of the law.

82.     Defendants' prosecution of Plaintiff was selective, invidious, in bad faith, and based on impermissible considerations, including Plaintiff's exercise of his constitutional rights.

83.     The prosecution of Plaintiff as set forth in this Complaint also violates state law.   This further demonstrates the vindictive and bad faith nature of the prosecution.

84.     As set forth in this Complaint, Defendants' adverse actions against Plaintiff were designed to intimidate, oppress, and punish Plaintiff and similarly situated individuals who share Plaintiff's political viewpoints, in violation of the equal protection guarantee of the Fourteenth Amendment.

85.     As a direct and proximate result of Defendants' violation of the Equal Protection Clause and Defendants' selective and unlawful enforcement of Michigan Compiled Laws § 750.543m, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and

injunctive relief and damages, including damages for pain, suffering, humiliation, and emotional distress.

### FOURTH CLAIM FOR RELIEF
### (Defamation/Slander—Michigan Law)

86.    Plaintiff hereby incorporates by reference all stated paragraphs.

87.    By reason of the aforementioned false, defamatory, libelous, and slanderous statements that were made and published by Defendant Rozell as set forth in this Complaint, Defendant Rozell injured Plaintiff in violation of Michigan common law proscribing defamation and Michigan Compiled Laws § 600.2911, which proscribes libel and slander.

88.    Defendant Rozell knew the defamatory, libelous, and slanderous statements of and concerning Plaintiff were false and/or he authored the defamatory, libelous, and slanderous statement with a reckless disregard of the truth and/or he authored the defamatory, libelous, and slanderous statements negligently.

89.    Defendant Rozell made and/or published the false, defamatory, libelous, and slanderous statements about Plaintiff knowing that they would injure Plaintiff's reputation in that the statements were defamatory *per se*.

90.    Defendant Rozell made and/or published the false, defamatory, libelous, and slanderous statements about Plaintiff with the intent to injure Plaintiff's reputation and to intimidate Plaintiff and others in order to chill their speech and

prevent them from challenging or complaining about the conduct and integrity of elections.

91.    Defendant Rozell made and/or published the false, defamatory, libelous, and slanderous statements about Plaintiff with actual and expressed malice and a reckless disregard of the truth.

92.    As a direct and proximate result of Defendant Rozell's false, defamatory, libelous, and slanderous statements, Plaintiff has suffered irreparable harm to his reputation, entitling him to declaratory and injunctive relief and damages, including damages for humiliation and emotional distress.

## FIFTH CLAIM FOR RELIEF
### (Right to Bear Arms— Second Amendment & Mich. Const. Article 1, § 6)

93.    Plaintiff hereby incorporates by reference all stated paragraphs.

94.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants Oakland County, McDonald, Bouchard, and Peschke have deprived Plaintiff of his rights secured by the Second Amendment as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article 1, § 6 of the Michigan Constitution.

95.    Both the United States Constitution and the Michigan Constitution grant individuals a right to keep and bear arms for self-defense and to ensure the security of a free State.  The Second Amendment of the United States Constitution

provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., Am. II. The Second Amendment is fully applicable to the states through the Fourteenth Amendment. Article 1, § 6 of the 1963 Michigan Constitution, which is Michigan's equivalent to the Second Amendment, states, "Every person has a right to keep and bear arms for the defense of himself and the state."

96.    The Second Amendment and Article 1, § 6 guarantee an individual, including Plaintiff, the right to possess and carry weapons in case of confrontation and for personal safety and the safety of their families. At the core of this protection is the right of citizens, such as Plaintiff, to use arms in defense of "hearth and home."

97.    As a direct and proximate result of Defendants' violation of the Second Amendment and Article 1, § 6 as set forth in this Complaint, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief and damages.

## SIXTH CLAIM FOR RELIEF
### (Unlawful Seizure—Fourth Amendment)

98.    Plaintiff hereby incorporates by reference all stated paragraphs.

99.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants Oakland County, McDonald, Bouchard, and Peschke deprived Plaintiff of his rights protected by the Fourth Amendment as applied to the states and their political

subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

100.    The Fourth Amendment protects against unreasonable seizures, including unlawful arrests.

101.    Defendants violated the Fourth Amendment by unlawfully arresting and jailing Plaintiff in the Oakland County Jail without probable cause.

102.    As a direct and proximate result of Defendants' violation of the Fourth Amendment, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief and damages, including damages for pain, suffering, humiliation, and emotional distress.

### SEVENTH CLAIM FOR RELIEF
### (Conspiracy to Violate Civil Rights—42 U.S.C. § 1983)

103.    Plaintiff hereby incorporates by reference all stated paragraphs.

104.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants McDonald, Bouchard, Peschke, and Rozell acted jointly and conspired with each other to violate Plaintiff's rights protected by the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

105. Defendants conspired to punish Plaintiff for his political speech, as set forth in this Complaint.

106. Defendants conspired to selectively enforce the law and to engage in a bad faith, malicious, and vindictive prosecution of Plaintiff in order to punish him for his political speech as set forth in this Complaint.

107. As a direct and proximate result of this conspiracy to violate Plaintiff's rights protected by the First, Second, Fourth, and Fourteenth Amendments, Plaintiff has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief and damages, including damages for pain, suffering, humiliation, and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A) to declare that Defendants violated Plaintiff's fundamental constitutional rights as set forth in this Complaint;

B) to declare that Defendants violated Plaintiff's rights protected by Michigan law as set forth in this Complaint;

C) to permanently enjoin Defendants Oakland County, Karen McDonald, Michael J. Bouchard, and Matthew Peschke from enforcing, in any way, Michigan Compiled Laws § 750.543m against Plaintiff for his conduct, specifically including

his speech, during the Oakland County recount held on or about December 15, 2023, as set forth in this Complaint;

D)   to declare that Michigan Compiled Laws § 750.543m is unconstitutional facially and as applied to Plaintiff's conduct, specifically including his speech, during the Oakland County recount held on or about December 15, 2023, as set forth in this Complaint;

E)   to award Plaintiff nominal, compensatory, and punitive damages in the amount of $5,000,000 against all Defendants jointly and severally;

F)   to order Defendant Oakland County to permanently expunge all records referencing or relating to Plaintiff's arrest, charge, and prosecution as set forth in this Complaint;

G)   to award Plaintiff his reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, Michigan Compiled Laws § 600.2911, and other applicable law;

H)   to grant such other and further relief as this court should find just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

- 31 -

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@muiselawgroup.com

s/ *David Yerushalmi*
David Yerushalmi, Esq. (Ariz. Bar No. 009616;
DC Bar No. 978179; Cal. Bar No. 132011;
NY Bar No. 4632568)
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20006
Tel: (646) 262-0500; Fax: (801) 760-3901
dyerushalmi@americanfreedomlawcenter.org

*Attorneys for Plaintiff*