## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

ANDREW HESS,

     Plaintiff,

v.

OAKLAND COUNTY, MICHIGAN;
KAREN MCDONALD, Oakland
County Prosecutor, Oakland County,
Michigan; JOE ROZELL, Director of
Elections, Oakland County, Michigan;
MICHAEL J. BOUCHARD, Oakland
County Sheriff, Oakland County,
Michigan; MATTHEW PESCHKE,
Sergeant, Oakland County Sheriff's
Office, Oakland County, Michigan,

     Defendants.

Case No. 2:25cv10665
Judge Gershwin A. Drain
Magistrate Judge Kimberly G. Altman

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants, Oakland County, Michigan, Karen McDonald, Joseph Rozell, Michael Bouchard, and Matthew Peschke (collectively referred to as "Defendants"), by their attorneys, Clark Hill PLC, file this Motion to Dismiss Plaintiff's Amended Complaint because Plaintiff has failed to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). In support of their Motion, Defendants rely on the accompanying Brief in Support.

On June 11, 2025, Defendants sought concurrence in the relief requested in this Motion, but concurrence was denied.

WHEREFORE, Defendants request that this Honorable Court grant this Motion to Dismiss, dismiss Plaintiff's Amended Complaint in its entirety with prejudice, award Defendants their costs and attorney fees, and grant any other relief this Court deems equitable.

Respectfully submitted,

CLARK HILL PLC

Dated: June 11, 2025          By:   /s/ *Robert N. Dare*
Robert N. Dare (P79207)
Lauren M. Smith (P87377)
500 Woodward Avenue, Suite 3500
Detroit, MI  48226
(313) 965-8300
rdare@clarkhill.com
lmsmith@clarkhill.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ANDREW HESS,

     Plaintiff,

v.

OAKLAND COUNTY, MICHIGAN;
KAREN MCDONALD, Oakland
County Prosecutor, Oakland County,
Michigan; JOE ROZELL, Director of
Elections, Oakland County, Michigan;
MICHAEL J. BOUCHARD, Oakland
County Sheriff, Oakland County,
Michigan; MATTHEW PESCHKE,
Sergeant, Oakland County Sheriff's
Office, Oakland County, Michigan,

     Defendants.

Case No. 2:25cv10665
Judge Gershwin A. Drain
Magistrate Judge Kimberly G. Altman

# DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION
# TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
# PURSUANT TO FED. R. CIV. P. 12(b)(6)

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES.................................................................. iii

ISSUES PRESENTED......................................................................... viii

INTRODUCTION ...............................................................................1

STATEMENT OF FACTS ...................................................................4

A.    Royal Oak Proposal B ..............................................................4

B.    Hess Addresses The Board and the Public During the Recount ....................5

C.    Hess's Unlawful Conduct ..............................................................5

D.    Two Judges Conclude That the Charge Against Plaintiff Is Supported By
      Probable Cause ..............................................................6

E.    The Constitutionality of MCL 750.543m is Challenged................................8

F.    Hess Files a Complaint and Amended Complaint...........................................9

LEGAL ARGUMENT...........................................................................10

I.     PLAINTIFF'S SECOND AMENDMENT CLAIM IS SUBJECT TO DISMISSAL...........10

II.    PLAINTIFF'S FALSE LIGHT/INVASION OF PRIVACY CLAIM FAILS. .................12

III.   DEFENDANTS KAREN MCDONALD, MICHAEL BOUCHARD, AND MATTHEW
       PESCHKE ARE EACH IMMUNE FROM PLAINTIFF'S LAWSUIT. .........................13

       A. Prosecutor Karen McDonald Is Also Absolutely Immune From Suit. ....17

       B. Sergeant Peschke Is Also Protected By Testimonial Immunity...............18

IV.    SHERIFF BOUCHARD SHOULD BE DISMISSED BECAUSE A § 1983 ACTION
       CANNOT BE BASED ON MERE SUPERVISOR LIABILITY. ..................................19

V.     DEFENDANT OAKLAND COUNTY, MICHIGAN SHOULD BE DISMISSED FROM
       THIS LAWSUIT. ..............................................................20

VI.    PLAINTIFF'S MALICIOUS PROSECUTION AND UNLAWFUL SEIZURE CLAIMS
       SHOULD BE DISMISSED..............................................................23

A. The Government Had Sufficient Probable Cause For Pretrial Detention. ...............................................................................................................24

VII.  PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS AS A MATTER OF LAW. ........26

A. This Court Should Abstain From Considering The Constitutionality Of MCL 750.543m Based On The *Pullman* Doctrine...................................26

B. Hess's Threat Is Not Protected Speech. ...................................................28

VIII.  PLAINTIFF'S EQUAL PROTECTION CLAIM LACKS MERIT. ..............................31

CONCLUSION ......................................................................................................34

# INDEX OF AUTHORITIES

## Cases

*Ashby v. Hustler Magazine, Inc.,*
  802 F.2d 856 (6th Cir.1986) ...............................................................13

*Badder v. Schmidt*,
  50 F. Supp. 3d 902 (E.D. Mich. 2014) ...............................................21

*Beck v. Hamblen Cnty., Tennessee,*
  969 F.3d 592 (6th Cir. 2020) ....................................................... 15, 16

*Bellamy v. Bradley,*
  729 F.2d 416 (6th Cir.1984) ...............................................................20

*Ben-Tech Indus. Automation v. Oakland Univ.*,
  2005 WL 50131 (Mich. Ct. App. Jan. 11, 2005)..................................12

*Boone v. Spurgess,*
  385 F.3d 923 (6th Cir. 2004) ..............................................................33

*Briscoe v. LaHue*,
  460 U.S. 325 (1983) ............................................................................19

*Cady v. Arenac Cnty.*,
  574 F.3d 334 (6th Cir. 2009) ..............................................................21

*City and County of San Francisco v. Sheehan*,
  575 U.S. 600 (2015) ............................................................................15

*Coker v. Summit Cnty. Sheriff's Dep't,*
  90 F. App'x 782 (6th Cir. 2003) .........................................................33

*Counterman v. Colorado*,
  600 U.S. 66 (2023) ..............................................................................28

*D.C. v. Wesby*,
  583 U.S. 48 (2018) ..............................................................................25

*D.J.M. ex rel P.M. v. Hanniblal Pub. Sch. Dist. No. 60,*
  647 F.3d 754 (8th Cir. 2011)...............................................................29

*Diehl v. Danuloff*,
   242 Mich.App. 120, 618 N.W.2d 83 (2000) .......................................................12

*District of Columbia v. Wesby*,
   583 U.S. 48 (2018) ............................................................................................15

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*,
   455 F.3d 690 (6th Cir. 2006) .............................................................................23

*Grant v. Hollenbach*,
   870 F.2d 1135 (6th Cir.1989) .............................................................................18

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)............................................................................................14

*Imbler v. Pachtman*,
   424 U.S. 409 (1976) ...........................................................................................17

*Ireland v. Tunis*,
   113 F.3d 1435(6th Cir. 1997) .............................................................................17

*Jarvis v. Eaton*,
   No. 08-14221-BC, 2010 WL 3565809 (E.D. Mich. Sept. 13, 2010) ..................19

*Jeffers v. Heavrin*,
   10 F.3d 380 (6th Cir.1993) .................................................................................25

*Jermano v. Taylor*,
   No. 11-10739, 2012 WL 4009865 (E.D. Mich. July 30, 2012) ..........................20

*Jones v. Oakland Cnty. Gov't*,
   2018 WL 1310017 (E.D. Mich. Feb. 16, 2018) ..................................................21

*Jordan v. Caruso*,
   2009 WL 2960031 (E.D. Mich. June 11, 2009)...................................................33

*Kaley v. United States*,
   57 U.S. 320 (2014) .............................................................................................25

*Lambert v. Hartman*,
   517 F.3d 433 (6th Cir. 2008) .............................................................................21

iv

*Lester v. Roberts*,
  986 F.3d 599 (6th Cir. 2021) .................................................................. 23, 24, 25

*Libertas Classical Ass'n v. Whitmer*,
  No. 20-2085, 2020 WL 6886262 (6th Cir. Nov. 20, 2020)..................................27

*Manizak v. Kelley*,
  No. 2:13-CV-11274, 2013 WL 1720717 (E.D. Mich. Apr. 22, 2013)................18

*Manuel v. City of Joliet*,
  580 U.S. 357 (2010) ...........................................................................................24

*Matuscak v. Argentine Twp Police Dep't*,
  No. 22-12621, 2023 WL 8016691 (E.D. Mich. Nov. 20, 2023) .........................23

*Moldowan v. City of Warren*,
  570 F.3d 698 (6th Cir. 2009) ..............................................................................19

*Monell v. Department of Social Services*,
  436 U.S. 658 (1978) ....................................................................... 20, 21, 22, 23

*Pearson v. Callahan*,
  555 U.S. 223 (2009)............................................................................................14

*People v. Kvasnicka*,
  18 N.W.3d 308 (Mich. 2025) ...............................................................................9

*People v. Kvasnicka*,
  No. 371542, 2025 WL 492469 (Mich. Ct. App. Feb. 13, 2025), *vacated and remanded*, No. 168181, 2025 WL 945738 (Mich. Mar. 28, 2025)....................8, 9

*People v. Osantowski*,
  274 Mich. App. 593 (2007), *rev'd in part, appeal denied in part*, 481 Mich. 103 (2008)..................................................................................................................30

*Perez v. Oakland County*,
  466 F.3d 416 (6th Cir. 2006) ..............................................................................15

*Price v. Montgomery Cnty.*,
  72 F.4th 711 (6th Cir. 2023)................................................................................17

*R.R. Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496, (1941) ..................................................................................... 26, 27

*Stemler v. City of Florence*,
  126 F.3d 856 (6th Cir. 1997) ........................................................................ 31, 33

*Sykes v. Anderson*,
  625 F.3d 294 (6th Cir. 2010) .................................................................................24

*Thomas v. City of Chattanooga*,
  398 F.3d 426 (6th Cir. 2005) .................................................................................21

*TM v. MZ*,
  326 Mich. App. 227 (2018) ....................................................................................28

*Torres v. Clark*,
  No. 12–3997, 2013 WL 1409327 (3d Cir. 2013) ...................................................29

*Traughber v. Beauchane*,
  760 F.2d 673 (6th Cir. 1985) .................................................................................27

*United States v. Armstrong*,
  517 U.S. 456 (1996) ........................................................................................ 31, 32

*United States v. Dodson*,
  No. 22-3998, 2024 WL 712494 (6th Cir. Feb. 21, 2024) .......................................28

*United States v. Hazel*,
  696 F.2d 473 (6th Cir.1983) ..................................................................................32

*Virginia v. Black*,
  538 U.S. 343 (2003) ...............................................................................................28

*Webb v. City of Flint*,
  2012 WL 3235000 (E.D. Mich. 2012) ...................................................................22

*Wegener v. Covington*,
  933 F.2d 390 (6th Cir. 1991) .................................................................................15

*White v. Kenny*,
  No. 15-CV-13085, 2016 WL 2622376 (E.D. Mich. May 9, 2016) ........................27

*Yeary v. Goodwill Indus.-Knoxville, Inc.,*
  107 F.3d 443 (6th Cir. 1997) ...................................................................................7

**Statutes**

MCL § 765.6b(1) ................................................................10

MCL § 765.6b(3) ................................................................11

MCL 750.543m................................................................ passim

MCL 750.543z ................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................15

MCR 6.106(D) ................................................................11

MCR 6.106(H)(1)................................................................11

## ISSUES PRESENTED

1.    **WHETHER PLAINTIFF'S SECOND AMENDMENT CLAIM SHOULD BE DISMISSED WHERE THE PROHIBITION OF FIREARMS WAS A LAWFUL CONDITION OF PLAINTIFF'S RELEASE ON BOND.**

       **Defendants Answer: Yes.**
       **Plaintiff Answers: No.**

2.    **WHETHER CLAIMS AGAINST MCDONALD, BOUCHARD, AND PESCHKE SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED GOVERNMENTAL IMMUNITY.**

       **Defendants Answer: Yes.**
       **Plaintiff Answers: No.**

3.    **WHETHER MCDONALD IS ENTITLED TO ABSOLUTE IMMUNITY AND PESCHKE IS ENTITLED TO TESTIMONIAL IMMUNITY.**

       **Defendants Answer: Yes.**
       **Plaintiff Answers: No.**

4.    **WHETHER OAKLAND COUNTY IS SUBJECT TO DISMISSAL WHERE PLAINTIFF FAILS TO IDENTIFY AN UNLAWFUL POLICY OR CUSTOM OF THE COUNTY.**

       **Defendants Answer: Yes.**
       **Plaintiff Answers: No.**

5.    **WHETHER PLAINTIFF'S MALICIOUS PROSECUTION AND UNLAWFUL SEIZURE CLAIMS SHOULD BE DISMISSED WHERE THERE WAS SUFFICIENT PROBABLE CAUSE FOR PLAINTIFF'S PRETRIAL DETENTION.**

       **Defendants Answer: Yes.**
       **Plaintiff Answers: No.**

6.     **WHETHER THE COURT SHOULD ABSTAIN FROM RULING ON THE CONSTITUTIONALITY OF AN APPLICABLE STATE STATUTE WHERE THE STATUTE IS UNDER REVIEW BY THE MICHIGAN COURT OF APPEALS, AND IF IT DOES NOT, WHETHER PLAINTIFF'S STATEMENT TO THE DIRECTOR OF ELECTIONS "HANG JOE FOR TREASON" DURING A RECOUNT IS A TRUE THREAT.**

        **Defendants Answer: Yes.**
        **Plaintiff Answers: No.**

7.     **WHETHER PLAINTIFF'S FALSE LIGHT/INVASION OF PRIVACY CLAIM FAILS WHERE THE ALLEGED STATEMENT DID NOT IDENTIFY PLAINTIFF AND THE ALLEGED STATEMENT WAS NOT MAKE WITH A RECKKLESS REGARDING FOR THE TRUTH.**

        **Defendants Answer: Yes.**
        **Plaintiff Answers: No.**

8.     **WHETHER PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM FAILS WHERE HE FAILS TO ALLEGE THAT SIMILARLY SITUATED INDIVIDUALS WERE NOT PROSECUTED UNDER THE SAME STATUTE AND THAT DEFENDANTS ACTED WITH A DISCRIMINATORY PURPOSE.**

        **Defendants Answer: Yes.**
        **Plaintiff Answers: No.**

## <u>INTRODUCTION</u>

Sadly, election officials have recently been subjected to increasingly violent and threatening behavior, furthering the degradation of public, civil discourse. The underlying conduct in this case is but one of many examples. During a December 2023 recount of a ballot initiative, Plaintiff sat across a table from, and made repeated angry references to Joseph Rozell, the Oakland County Director of Elections.  Plaintiff then stepped into the building lobby and said, loud enough for Receptionist Kaitlyn Howard to clearly hear, "hang Joe for treason." This statement was made after Plaintiff personally told Rozell that he should "have fun dealing with treason." Plaintiff's statement was not a joke, not hyperbole, and not an expression of an idea or opinion, unfavorable or otherwise. Plaintiff then addressed the public in a passionate speech that attacked Oakland County, the Director of Elections, and the election attorneys alike, announcing that the recount process was "bullshit."

Based on all of the information and evidence, including witness statements, the Oakland County Prosecutor's Office charged Plaintiff with making a terrorist threat under MCL 750.543m. After Defendant Sergeant Peschke testified to the facts of the case at the Swear To, District Court Judge Bowie unequivocally found probable cause for a warrant to arrest Plaintiff. Plaintiff allegedly spent two hours in a jail cell awaiting processing, but was released on a personal recognizance bond with various conditions that, among others, prohibited Plaintiff from possessing a

1

firearm. A Preliminary Examination was held in the 50th District Court. The Prosecutor's office presented testimony from Howard, who heard and reported Plaintiff's threat, and Rozell. The District Court Judge found probable cause to believe that a crime had been committed, and that Plaintiff was the person who committed it, and bound the case over to the Oakland County Circuit Court.

While the charge against Plaintiff was pending, in another case, the Michigan Court of Appeals held that MCL 750.543m was unconstitutional. The court thereafter dismissed Plaintiff's charge without prejudice pending further proceedings on the statute's constitutionality. A month later, the Michigan Supreme Court vacated the Court of Appeals' ruling and remanded the case back to the Court of Appeals with various instructions and principles to consider. There are currently no pending criminal charges against Plaintiff. Nevertheless, Plaintiff filed this Amended Complaint ("Complaint") alleging he is the victim of various constitutional violations.

The Complaint should be dismissed in its entirety. Plaintiff's Second Amendment claim is subject to dismissal because the lawful bond condition of no firearms, ordered by the presiding Judge pursuant to Michigan criminal procedure, cannot give rise to a Second Amendment claim. Plaintiff's False Light/Invasion of privacy claim against Rozell fails because it is barred by governmental immunity,

because Rozell did not publicly identify Plaintiff, and because Rozell did not show a reckless disregard of the truth.

All of Plaintiff's claims asserted against McDonald, Bouchard, and Peschke—government officials—should be dismissed because Plaintiff fails to plead conduct to avoid qualified governmental immunity. Aside from generally asserting a lack of probable cause, which is not sufficient, Plaintiff fails to identify or explain how McDonald, Bouchard, and Peschke, *in this specific case*, violated a clearly established constitutional right at the time of alleged misconduct. Because the alleged unlawfulness of the conduct of McDonald, Peschke, and Bouchard in this case was not clearly established, they are each entitled to qualified immunity. In addition to qualified immunity, McDonald is protected from suit under absolute and prosecutorial immunity and Peschke is protected under testimonial immunity.

Defendant Oakland County should also be dismissed because Plaintiff fails to identify any unlawful policy or custom of Oakland County, much less connect the policy to the municipality itself, and show that his particular injury was incurred because of the execution of that policy. Oakland County should also be dismissed if the named individuals—McDonald, Bouchard, and Peschke—are found to be immune from suit because case law dictates that then so, too, is Oakland County.

Plaintiff's claims of malicious prosecution and unlawful seizure are subject to dismissal because there was sufficient probable cause for pretrial detention, as found

by Judge Bowie. In fact, Plaintiff fails to plead any facts showing how a probable cause finding violated clearly established law. Nor can Plaintiff identify a case where an officer (or government official) acting under similar circumstances was found to have violated the Fourth Amendment, which is a requirement of his claims.

With respect to Plaintiff's First Amendment claim, this Court should abstain from deciding the constitutionality of MCL 750.543m because the question is currently pending before the Michigan Court of Appeals. But even so, Plaintiff's statement to "hang Joe for treason" constitutes a "true threat" that is not protected.

Plaintiff's Fourteenth Amendment claim fails because he fails to allege that similarly situated individuals were not prosecuted under MCL 750.543m to establish that he was subjected to selective prosecution. Nor can he establish that Defendants acted with a discriminatory purpose.

## STATEMENT OF FACTS

### A.    Royal Oak Proposal B

Royal Oak Proposal B was an initiative included on the November 7, 2023, voting ballot that permitted "ranked-choice voting," a system where, instead of selecting a single candidate, voters could rank candidates for an office.[1] A recount on Proposal B was held on December 15, 2023, in the Elections Division, Board of

---

[1]   *See*   https://www.theoaklandpress.com/2023/11/03/ranked-choice-voting-road-millage-proposals-on-royal-oak-ballot/.

4

Canvassers/Training Room ("Recount Room") inside the Oakland County Courthouse, and was overseen by Defendant Joseph Rozell ("Rozell"), the Oakland County Director of Elections. *[ECF No. 23, PageID.522, ¶ 30.]* Deputies from the Oakland County Sheriff's Department were on-site during the recount. *[Id.]*

**B.    Hess Addresses The Board and the Public During the Recount**

During the recount, members of the public were permitted to address the Board. *[ECF No. 16-2, PageID.242.]* At this time, Plaintiff gave an impassioned speech about his belief that Oakland County was "cheating" the election. During this speech, Plaintiff stated that a group of canvassers was advised by the Director of Elections and by counsel who has "whatever rights he wants. . . [.]" *[ECF No. 12-2].* Hess then took aim at attorneys present at the recount, noting it was "bullshit" that they could sit on the other side of the table while he, an American citizen, could not. He concluded that "cheating elections is treason," and stated to the room "what is the penalty for treason, I'll let somebody else tell you what it is." *[Id.]* A woman can be heard clapping and yelling "treason" in the background of the video *[Id.]*

**C.    Hess's Unlawful Conduct**

Prior to Plaintiff's baseless public pronouncement alleging cheating in the election, Plaintiff walked into the lobby and stated "hang Joe [Rozell] for treason." *[ECF No. 23, PageID.23, ¶ 32; ECF No. 16-3, PageID.249.]* This statement was overheard by Kaitlyn Howard ("Howard"), the Receptionist. Howard approached

Officer Lee Van Camp of the Oakland County Sheriff's Office to report Plaintiff's statement. *[ECF No. 16-3, PageID.249.]* Van Camp then asked Plaintiff to step into the lobby where he questioned Plaintiff about Howard's report. Van Camp reported that when he notified Plaintiff of Howard's report, Plaintiff "smirked [and] slightly nodded his head 'yes.'" *[Id.]*[2] A Case Report memorializing Howard's report and Van Camp's subsequent actions followed. *[ECF No. 16-3, PageID.246-74.]*

Van Camp notified Rozell of Plaintiff's threatening statement that same day. Rozell communicated that he was in "fear of Hess, and he was in fear of his life due to Hess's comments." *[ECF No. 16-3, PageID.250.]* Rozell notified the Huntington Woods Police Department of the potential threat to Rozell, and officers were instructed to conduct extra patrols of Rozell's residence. *[ECF No. 16-4, PageID.276.]* This was not the first time that Plaintiff threatened Rozell and accused him of committing a crime. At a separate recount at the Troy Community Center, Hess demanded that two sheriff's deputies arrest Rozell for interfering with the recount. *[ECF No. 12-2, PageID.121.]*

### D. Two Judges Conclude That the Charge Against Plaintiff Is Supported By Probable Cause

---

[2] Van Camp's recollection is corroborated by his body cam footage. *[Ex. E to Mot. for Prelim. Inj.; ECF No. 15, PageID.209.].* Another video shows a separate incident where Rozell approaches Hess to respond to a question Hess raised about precinct numbers listed on ballot containers. As the conversation concludes, Hess angrily states to Rozell, "treason is going to be tough, Joe." *[Ex. 5 to Resp. to Mot. for Prelim. Inj.]*

On April 2, 2024, the Oakland County Prosecutor's Office charged Plaintiff with one count of making a terrorist threat. On April 4, 2024, Sergeant Peschke testified to the facts gathered as part of the investigation, through witness interviews and statements. *[Ex. 1.]* Judge Bowie found probable cause and signed the criminal complaint and arrest warrant. *[ECF No. 12-2, PageID.197.]* Plaintiff was released on a personal recognizance bond of $20,000. *[ECF No. 23, PageID.537, ¶ 72.]* The terms of pretrial release ordered by Judge Bowie included the requirement that Plaintiff have no contact with Rozell, that Plaintiff not indulge in alcohol or drugs, and that Plaintiff not possess any weapons. *[ECF No. 16-5, PageID.278.]*

Judge Fowlkes Gross of the 50th District Court held a preliminary examination on May 30, 2024, and heard testimony from Howard and Rozell. [3] Howard testified that she witnessed Plaintiff state "hang Joe for treason" in the lobby of the building, outside the Recount Room. *[ECF No. 12-2, PageID.170.]* She also heard a witness say in response to Plaintiff's comment "that's too much." *[ECF No. 12-2, PageID.176.]* Howard confirmed that she reported Plaintiff's threatening comment to Van Kamp, who initiated an investigation by interviewing witnesses

---

[3] Hess attached Volume I of the Transcript from the Preliminary Examination to his Motion for Preliminary Injunction. *[ECF No. 12-2, PageID.104-87.]* Volume II, from September 6, 2024, is attached to this Motion as Exhibit 2 for completeness. *See Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir. 1997) (finding extrinsic materials may be considered by a court if they "filled in the contours and details" of a complaint).

and obtaining statements. Howard provided a written statement at the time of the incident that was consistent with her testimony. *[ECF No. 16-3, PageID.249.]*

Rozell testified at the Preliminary Exam that during a ballot container seal inspection, Plaintiff called him over to ask a question, demanding to see a broken seal. Rozell explained that there is no requirement under the law that a broken seal be retained. Agitated by the answer, Plaintiff stated to Rozell "treason is going to look very good on you." *[ECF No. 12-2, PageID.128.]* Rozell testified that later in the recount session, during the public comment portion, Plaintiff proclaimed that the recount was "bullshit" and stated to the crowd that he would "let [them] look up the punishment for treason." *[ECF No. 12-2.]* Rozell testified that sometime after the public comment he was informed that an individual threatened his life. Rozell testified that he was disturbed by the threat and contacted the police where he lived to request additional patrols of his residence. On April 2, 2024, Plaintiff was charged with making a terrorist threat in violation of MCL 750.543m.

## E.     The Constitutionality of MCL 750.543m is Challenged

While the proceedings against Hess were pending, on February 13, 2025, the Michigan Court of Appeals addressed the validity of MCL 750.543m in *People v. Kvasnicka*, No. 371542, 2025 WL 492469 (Mich. Ct. App. Feb. 13, 2025), *vacated and remanded*, No. 168181, 2025 WL 945738 (Mich. Mar. 28, 2025). The Court

held that the statute was unconstitutional because it did not address the defendant's state of mind when he "threatens to commit an act of terrorism." *Id*. at *4.

On March 28, 2025, the Michigan Supreme Court vacated the Michigan Court of Appeals' ruling in *Kvasnicka* and remanded the case to the Court of Appeals to consider: "the proper interpretation of MCL 750.543m in light of . . MCL 750.543z, which provides that 'a prosecuting agency shall not prosecute any person or seize any property for conduct presumptively protected by the first amendment to the constitution of the United States in a manner that violates any constitutional provision'; and . . . the constitutional-doubt canon." *People v. Kvasnicka*, 18 N.W.3d 308 (Mich. 2025). The Michigan Supreme Court directed the Court of Appeals to address "whether it is appropriate to adopt a limiting construction of MCL 750.543m to remedy any remaining constitutional deficiency" and, "if so, what that limiting construction should be . . . .") *Id*. at *1.

On March 6, 2025, after the Court of Appeals' decision in *Kvasnicka*, but before the remand order from the Michigan Supreme Court, the criminal charge against Plaintiff was dismissed without prejudice. As Plaintiff concedes, "there are no ongoing state proceedings against him." *[ECF No. 12, PageID.65.]*

## F.   Hess Files a Complaint and Amended Complaint

On March 10, 2025, Hess filed his initial Complaint. *[ECF No. 1, PageID.1-32.]* Defendants filed a Motion to Dismiss on May 12, 2025. *[EFC No. 22,*

*PageID.355.]* Rather than responding to the  Motion, Plaintiff filed an Amended Complaint, which asserts new allegations that nevertheless remain deficient.  *[EFC No. 23, PageID.537.]* He alleges violations of the First, Second, Fourth (malicious prosecution and unlawful seizure), and Fourteenth Amendments (Counts I, II, III, V, and VI) and a claim for False Light/Invasion of Privacy (Count IV).

## LEGAL ARGUMENT

### I.   PLAINTIFF'S SECOND AMENDMENT CLAIM IS SUBJECT TO DISMISSAL.

Count V of Plaintiff's Complaint alleges that "Defendants Oakland County, McDonald, Bouchard, and Peschke have deprived Plaintiff of his rights secured by the Second Amendment." *[ECF No. 23, PageID.552.]* The basis for this claim is the allegation that "Plaintiff was placed on a $20,000 personal recognizance bond, which deprived him of his liberty. The bond conditions . . .  deprived him of his fundamental right to bear arms." *[ECF No. 23, PageID.537, ¶ 72.]* Plaintiff alleges that he was unlawfully forced to "remove all weapons from his home, thus depriving him of his ability to protect his family." *[ECF No. 23, PageID.543, ¶ 94.]*

Plaintiff's Second Amendment claim is subject to dismissal for two reasons. First, the suspension of Plaintiff's CPL and required removal of weapons from his home was a lawful condition of his pretrial release ordered by Judge Bowie in the 50th District Court, set in compliance with Michigan law and the Michigan Court Rules. *[ECF No. 16-5, PageID.278.]* Under MCL § 765.6b(1), "[a] judge or district

court magistrate may release a defendant under this subsection subject to conditions reasonably necessary for the protection of 1 or more named persons." Under MCL § 765.6b(3) "an order . . . issued under this subsection and subsection (1) may impose a condition that the defendant not purchase or possess a firearm."

Similarly, MCR 6.106(D) provides that "[i]f the court determines that the release described in subrule (C) [release on personal recognizance] . . . will not reasonably ensure the safety of the public, the court may order the pretrial release of the defendant on the condition or combination of conditions that the court determines are appropriate including . . .(k) not possess a firearm or other dangerous weapon." If a party has an issue with the bond conditions, he can seek a review of a release decision by filing a motion in a court having appellate jurisdiction over the court that made the release decision. MCR 6.106(H)(1).

Michigan law and Court Rules specifically authorize Judge Bowie to place restrictions on Plaintiff's possession of a firearm as condition of his bond.[4] While Plaintiff takes issue with the bond conditions now, he did not appeal Judge Bowie's bond conditions despite having the opportunity to do so.

Second, even if Plaintiff could bring a claim related to the terms of his pretrial release, none of the Defendants set the terms of the release. Judge Bowie exercised

---

[4] Plaintiff does not cite a single Michigan case in which a judge's bond conditions restricting possession of weapons gave rise to a Second Amendment claim.

his discretionary judicial authority in setting those conditions. And, of course, Plaintiff cannot bring a claim against Judge Bowie, as "[i]t is well settled that judges are accorded absolute immunity from liability for acts performed in the exercise of their judicial functions." *Diehl v. Danuloff*, 242 Mich.App. 120, 128, (2000). Plaintiff's Second Amendment Claim should be dismissed.

## II.   PLAINTIFF'S FALSE LIGHT/INVASION OF PRIVACY CLAIM FAILS.

Rozell is immune from this claim under MCL 691.1407(1), the Government Tort Liability Act ("GTLA")." Governmental employees are immune from tort liability for injuries they cause during the course of their employment provided they are acting within the scope of their authority, they are engaged in the discharge of a governmental function, and their "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." *Ben-Tech Indus. Automation v. Oakland Univ.*, 2005 WL 50131, at *4 (Mich. Ct. App. Jan. 11, 2005). Plaintiff's claim for false light/invasion of privacy is a tort that is directed to Rozell, a governmental employee, based on an interview conducted in connection with his role as the Director of Elections. Rozell is therefore immune from liability.

Even if immunity does not apply, Plaintiff's claim is subject to dismissal. To prove a false light claim, Plaintiff must show that: (1) the false light in which he was placed would be highly offensive to a reasonable person; and (2) Rozell had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter

and the false light in which he was placed. *Ashby v. Hustler Magazine, Inc.,* 802 F.2d 856, 860 (6th Cir.1986).

The CBS News article and accompanying televised interview with Rozell that Plaintiff relies on does not identify Plaintiff. See https://www.cbsnews.com/detroit/news/oakland-county-director-of-elections-allegedly-threatened-by-man-during-a-ballot-recount/. Plaintiff cannot establish a false light claim where the quotations from, and interview with, Rozell do not even identify Plaintiff, referring to him as "a man." Even if it did, Rozell's statement that "he said that he was going to hang me" was not in reckless disregard for the truth. Rozell simply conveyed what was reported to him by the police. Plaintiff's false light claim should be dismissed.

## III. DEFENDANTS KAREN MCDONALD, MICHAEL BOUCHARD, AND MATTHEW PESCHKE ARE EACH IMMUNE FROM PLAINTIFF'S LAWSUIT.

Plaintiff alleges that "McDonald, as the Oakland County Prosecutor, was the authorized decision maker for Oakland County to pursue the unlawful politicized prosecution of Plaintiff." *[ECF No. 23, PageID.514, ¶ 10.]* Bouchard is the Oakland County Sheriff and is also responsible for the Oakland County Jail. *[ECF No. 23, PageID.515, ¶ 14.]* According to Plaintiff, Bouchard "personally influenced, participated in, and/or recommended the unlawful and  pursue the unlawful and politicized prosecution of Plaintiff." *[Id.]* Plaintiff also alleges that Peschke was the lead investigator of Plaintiff for Oakland County, and that he too "personally

13

influenced, participated in, and/or recommended the unlawful and politicized prosecution of Plaintiff." *[ECF No. 23, PageID.516, ¶15.]* This Court should dismiss all of the claims asserted against McDonald, Bouchard, and Peschke because Plaintiff fails to plead conduct to avoid the broad sweep of qualified immunity.

Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To determine whether qualified immunity applies, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right . . . and decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson,* 555 U.S. at 232 (internal citations omitted). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and

fact." *Id.*; *see also*, *Perez v. Oakland County*, 466 F.3d 416, 427 (6th Cir. 2006) (noting that the right must be established in the specific context of the case, not as a broad general proposition, and "[i]f reasonable officers could disagree about the lawfulness of the conduct in question, immunity must be recognized"). In response to a Fed. R. Civ. P. 12(b)(6) Motion, Plaintiff bears the burden of demonstrating that McDonald, Bouchard, and Peschke are not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

Plaintiff cannot overcome this significant burden to demonstrate that qualified immunity does not apply to the McDonald, Bouchard, and Peschke. Plaintiff fails to "identify with a high degree of specificity the legal rule that a government official allegedly violated." *Beck v. Hamblen Cnty., Tennessee*, 969 F.3d 592, 599 (6th Cir. 2020). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015). "The plaintiff has identified a rule at too high a level of generality "if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the identified rule] was firmly established.'" *Beck*, 969 F.3d at 599 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)). In this context, the Sixth Circuit has specifically explained that while the Fourth Amendment bars officers from making arrests without probable cause,

> [t]his general rule—that officers must have probable
> cause—typically will not answer whether an officer had

> probable cause on a particular occasion. Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered. So a body of relevant case law addressing similar facts is usually necessary to show a violation of a clearly established rule in the probable-cause context.

*Beck*, 969 F.3d at 599–600.

At bottom, nearly all of Plaintiff's claims tie back to his allegation that there was no probable cause for his arrest, which led to an unlawful seizure and prosecution. But Plaintiff offers no support to show that a violation of a clearly established rule occurred in the probable cause context. Nor does Plaintiff provide a body of relevant case law addressing similar circumstances.

A preliminary exam with witness testimony occurred on May 30, 2024. Based on the facts gathered, McDonald, as Prosecutor, made the decision to charge Plaintiff for Making a False Report or Threat of Terrorism. On April 4, 2024, Peschke testified to all of the pertinent facts gathered in the investigation of Plaintiff's conduct, Judge Bowie made a finding of probable cause and issued a warrant for Plaintiff's arrest. *[Ex. 1.]* Aside from generally asserting a lack of probable cause, Plaintiff fails to identify or explain how Peschke, Bouchard, or McDonald, *in this specific case*, violated a clearly established constitutional right at the time of alleged misconduct. Even if Plaintiff was permitted to rely on a general proposition of probable cause, reasonable officers and prosecutors could disagree about whether

probable cause existed and whether the arrest was lawful – which, in and of itself, requires that immunity be recognized. McDonald, Peschke, Bouchard are each entitled to qualified immunity.

## A. **Prosecutor Karen McDonald Is Also Absolutely Immune From Suit.**

Prosecutor McDonald is also protected from Plaintiff's claims by absolute immunity in her role as the prosecutor. "American law has long recognized absolute immunity for those whose special functions or constitutional status requires complete protection from suit." *Price v. Montgomery Cnty.*, 72 F.4th 711, 719 (6th Cir. 2023) (quotations omitted). The Supreme Court has specifically extended this immunity to state prosecutors acting within the scope of their prosecutorial duties in connection with the initiation and pursuit of criminal prosecutions. *Imbler,* 424 U.S. at 427-428 (1976)). Similarly, the Sixth Circuit has observed:

> [a] prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity. In this role, a prosecutor is unquestionably functioning as an advocate for the state in the judicial process, and absolute immunity is fully justified because the integrity of the judicial system depends in large part upon a prosecutor's ability to exercise independent judgment in deciding whether and against whom to bring criminal charges.

*Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997).

McDonald was unquestionably functioning as an advocate for the State of Michigan when she made the decision to charge Plaintiff with making a threat of

17

terrorism. McDonald's actions are therefore protected by absolute immunity. McDonald should be dismissed from this case.

Plaintiff attempts to plead around McDonald's immunity by alleging that she is liable in her personal capacity for acts that are not prosecutorial functions, such as "investigative efforts to obtain an unlawful arrest warrant . . . , authorizing the investigation of Plaintiff, advising the County Sheriff on the investigation, using the media to promote her political agenda, and issuing press releases." *[ECF No. 23, PageID.515, ¶11.]* But again, all of the alleged conduct relates to McDonald's role and advocacy on behalf of the State of Michigan. *Manizak v. Kelley*, No. 2:13-CV-11274, 2013 WL 1720717, at *2 (E.D. Mich. Apr. 22, 2013).

Moreover, prosecutorial immunity applies even if McDonald allegedly acted wrongfully or maliciously. *See*: *Grant v. Hollenbach,* 870 F.2d 1135, 1138 (6th Cir.1989) (prosecutor absolutely immune from suit for allegedly conspiring to present false charges to the grand jury). Thus, the "unlawful conduct," which stems from the false allegation that McDonald intentionally omitted presenting video of Plaintiff's public comments when seeking a warrant, is still not enough to defeat the application of prosecutorial immunity.

## B. **Sergeant Peschke Is Also Protected By Testimonial Immunity.**

Plaintiff alleges that Peschke "presented false and misleading testimony in order to secure a warrant for Plaintiff's arrest." *[ECF No. 23, PageID.533.]* He

18

alleges that Peschke's testimony "contained material falsehoods and omissions of material facts." Paragraph 66 quotes a portion of Peschke's testimony and then alleges that "based in this materially false presentation . . . a warrant was issued for Plaintiff's arrest on April 4, 2024," *[ECF No. 23, PagedID.535, ¶¶ 66-67]* and yet Plaintiff fails to identify what was "materially false."

With respect to Peschke's testimony leading to the arrest warrant for Plaintiff, Peschke is protected by absolute testimonial immunity. "Although government officials enjoy only qualified immunity as to their pretrial conduct, 'all witnesses - police officers as well as lay witness - are absolutely immune from civil liability based on their trial testimony in judicial proceedings.'" *Jarvis v. Eaton*, 2010 WL 3565809, at *5 (E.D. Mich. Sept. 13, 2010) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983)). "As with any witness, police officers enjoy absolute immunity for any testimony delivered 'at adversarial judicial proceedings,' including preliminary examination testimony." *Id*. (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 735 (6th Cir. 2009)). Given that Plaintiff's allegations against Peschke solely relate to Peschke's testimony at the April 4, 2024, proceeding, Peschke should be dismissed from this lawsuit.

## IV.   SHERIFF BOUCHARD SHOULD BE DISMISSED BECAUSE A § 1983 ACTION CANNOT BE BASED ON MERE SUPERVISOR LIABILITY.

Claims against Sheriff Bouchard are also subject to dismissal because Plaintiff makes no plausible allegation that Sheriff Bouchard was personally involved in any

19

of the alleged violations of his civil rights. Plaintiff vaguely alleges Bouchard is the Sheriff, is responsible for the Oakland County Jail and "through his office . . . recommended the prosecution of Plaintiff, and he conspired and worked jointly with the Oakland County Prosecutor to pursue the unlawful and politicized prosecution of Plaintiff." *[ECF No. 23, PageID.515, ¶ 14.]*

In a § 1983 action, liability cannot be based on a theory of *respondeat superior*. Plaintiff must show that the supervisory official, Bouchard, impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984). This was precisely the rationale of the court in *Jermano v. Taylor*, 2012 WL 4009865, at *4 (E.D. Mich. July 30, 2012), which dismissed a civil rights claim against Bouchard (and state tort claims based on absolute immunity). The same reasoning applies here, where Plaintiff fails to allege or offer evidence of any personal involvement.  Plaintiff's conclusory allegation that Bouchard "personally influenced, participated in, and/or recommended" Plaintiff's arrest and prosecution is not enough. Bouchard should be dismissed.

## V.   DEFENDANT OAKLAND COUNTY, MICHIGAN SHOULD BE DISMISSED FROM THIS LAWSUIT.

Under "*Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978), a plaintiff suing a unit of local government, such as a county, must identify an unconstitutional policy or custom in order to prevail on a § 1983 claim against it."

20

*Cady v. Arenac Cnty.*, 574 F.3d 334, 345 (6th Cir. 2009). A plaintiff must adequately plead in his complaint (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen. *Lambert v. Hartman,* 517 F.3d 433, 439 (6th Cir. 2008). "[F]or a municipality to be liable under Section 1983, the local government policy or custom "must be the moving force of the constitutional violation." *Monell* at 690–95. "To satisfy the *Monell* requirements, a plaintiff must identify the policy, connect the policy to the municipality itself, and show that the particular injury was incurred because of the execution of that policy." *Badder v. Schmidt*, 50 F. Supp. 3d 902, 919 (E.D. Mich. 2014). Monell municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Jones v. Oakland Cnty. Gov't*, 2018 WL 1310017, at *4 (E.D. Mich. Feb. 16, 2018).

There are four avenues to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

The only allegation in Plaintiff's Complaint that even attempts to identify a policy or custom is the allegation that the Defendants subscribed to a "Targeting Policy" whereby they "target for adverse and retaliatory treatment individuals, including Plaintiff, who challenge the validity of elections and the actions of election officials in Oakland County." *[ECF No. 23, PageID.514, ¶10].* While the alleged Targeting Policy may exist in Plaintiff's imagination, no such policy exists in reality. Plaintiff cannot create a policy based on his misperceptions and then point to that policy to attempt to establish liability. *See*, *e.g. Webb v. City of Flint*, 2012 WL 3235000 (E.D. Mich. 2012) (dismissing *Monell* claim because general allegations of perceived police corruption do not constitute an identifiable policy or custom).

Plaintiff's inadequate training or supervision theory also lacks merit. Plaintiff alleges Oakland County "trained, supervised, and employed" the individual defendants, and that the County's "deficient training and supervision . . . was done with deliberate indifference as to their known or obvious consequences and were a moving force behind the actions that deprived Plaintiff of his fundamental constitutional rights." *[ECF No. 23, PageID.516, ¶¶ 17-18.]* Under this theory, "the plaintiff must prove that: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700

(6th Cir. 2006). Plaintiff fails to allege how the individual Defendants were inadequately trained or supervised, simply contending that the Defendants' general conduct in connection with the arrest and prosecution is itself evidence of the County's lack of training and supervision. This is insufficient as a matter of law. *Matuscak v. Argentine Twp Police Dep't*, No. 22-12621, 2023 WL 8016691, at *3 (E.D. Mich. Nov. 20, 2023) (Explaining how conclusory allegations are not sufficient to state a *Monell* claim for failure-to-train).

## VI.   PLAINTIFF'S MALICIOUS PROSECUTION AND UNLAWFUL SEIZURE CLAIMS SHOULD BE DISMISSED.

Count II of Plaintiff's Complaint, malicious prosecution, alleges that Defendants Oakland County, McDonald, Bouchard, and Peschke "made, influenced, or participated in the decision to prosecute Plaintiff; there was no probable cause for the prosecution; as a consequence of the legal proceedings, Plaintiff suffered a deprivation of liberty apart from the initial arrest, and the criminal proceeding was resolved in Plaintiff's favor, all in violation of the Fourth Amendment." *[ECF No. 23, PageID.547.]* Count VI of the Complaint alleges that Defendants also violated Plaintiff's Fourth Amendment rights by "unlawfully arresting and jailing Plaintiff in the Oakland County Jail without probable cause." *[ECF No. 23, PageID.553.]*

Plaintiff alleges independent claims of malicious prosecution and unlawful seizure. First, it is not entirely clear whether a malicious prosecution claim even exists under the Fourth Amendment. *Lester v. Roberts*, 986 F.3d 599 (6th Cir. 2021)

(Noting that "neither the Constitution nor § 1983 uses the words 'malicious prosecution'"). The Sixth Circuit has called the malicious prosecution label an "unfortunate and confusing" "misnomer," and the U.S. Supreme Court has avoided that name altogether. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010); *Manuel v. City of Joliet*, 580 U.S. 357 (2010). Instead, according to the Sixth Circuit, when faced with malicious prosecution claims, *Manuel* suggests that courts should focus on the *seizure* (pretrial detention) rather than the *prosecution* (criminal proceedings). *Lester*, 986 F.3d at 607. However, just as in *Lester*:

> this distinction between a seizure and a prosecution does not matter here. Whether it should be called a "malicious-prosecution claim" or simply an "unreasonable-seizure claim," the claim has two universally applicable ground rules. As a matter of substance, the Fourth Amendment prohibits only those pretrial seizures (or prosecutions) that lack probable cause, and § 1983 grants qualified immunity to defendants who mistakenly but reasonably conclude that probable cause exists. As a matter of procedure, the Fourth Amendment prohibits extended pretrial detentions unless a neutral decisionmaker finds that probable cause exists, and § 1983 grants absolute immunity to witnesses who testify before one such decisionmaker. *Id.*

## A. The Government Had Sufficient Probable Cause For Pretrial Detention.

Plaintiff complains that the defendant government officials detained— or, "seiz[ed]"— Plaintiff for two hours. *[ECF No. 23, PageID.546.]* The Fourth Amendment prohibits a defendant's pretrial detention unless the government has "probable cause to believe he committed a crime." *Manuel*, 580 U.S. at 368.

Establishing probable cause is not a "high bar." *Kaley v. United States*, 57 U.S. 320, 338 (2014). "It does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction beyond a reasonable doubt." *Lester*, 986 F.3d at 608. Establishing probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity.'" *Id.* (quoting *D.C. v. Wesby*, 583 U.S. 48, 57 (2018)). "[P]robable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness." *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir.1993).

While those asserting a Fourth Amendment claim against a pre-trial detention (or prosecution) must show at a minimum, that the defendant lacked probable cause, a § 1983 plaintiff is also subject to additional statutory requirements. *Lester*, 986 F.3d at 608. "If a defendant relies on the defense of qualified immunity, the plaintiff must show that a defendant's probable-cause finding violated clearly established law. In this fact-dependent context, that test will generally require the plaintiff to 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *Lester*, 986 F.3d at 608 (quoting *Wesby*, 583 U.S. at 589-590 (internal citation omitted).

Based on all of the evidence provided, Judge Bowie concluded that the government met its burden of establishing probable cause and signed an order for

Plaintiff's arrest and an order for pretrial release. *[ECF No. 12-2, PageID.197.]* Plaintiff alleges that Peschke's testimony "contained material falsehoods and omissions of material facts" leading to a warrant for Plaintiff's arrest, but Plaintiff fails to identify a specific "materially false" statement. Plaintiff fails to plead any facts showing how a probable-cause finding violated clearly established law. Nor can Plaintiff identify a case where an officer (or government official) acting under similar circumstances was held to have violated the Fourth Amendment. Plaintiff's malicious prosecution and unlawful seizure claims fail as a matter of law.

## VII.   PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS AS A MATTER OF LAW.

Plaintiff alleges that Defendants Bouchard, Peschke, and McDonald violated his First Amendment right to freedom of speech when he was "arrest[ed], detain[ed], and prosecut[ed]" for engaging in political speech and based on the "content and viewpoint of his political speech." *[ECF No. 23, PageID.544-45.]* This Court should abstain from deciding this issue because the constitutionality of MCL 750.543m is currently before the Michigan Court of Appeals. Alternatively, Count I lacks merit because Hess's statement "hang Joe for treason" is a "true threat" that is not protected by the First Amendment.

### A. This Court Should Abstain From Considering The Constitutionality Of MCL 750.543m Based On The *Pullman* Doctrine.

Federal courts routinely abstain from examining the constitutionality of statutes when the inquiry is squarely before the state that enacted the statute. *See*

*Libertas Classical Ass'n v. Whitmer*, No. 20-2085, 2020 WL 6886262, at *2 (6th Cir. Nov. 20, 2020) (holding that the district court did not err when it invoked the *Pullman* doctrine to abstain from adjudicating the validity of the at-issue emergency orders that were pending before the Michigan court); *White v. Kenny*, 2016 WL 2622376, at *1 (E.D. Mich. May 9, 2016) (holding that "[g]iven the uncertainty of Michigan law on this issue, the action is dismissed in its entirety under the *Pullman* abstention doctrine").

In *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, (1941), the U.S. Supreme Court introduced the doctrine of abstention "whereby the federal courts, 'exercising a wise discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary.'" *Id*. at 645. It explained that federal courts should abstain from deciding difficult and unsettled questions of state law that are best decided by, or pending before, the state court. *Id*. The Sixth Circuit has applied *Pullman* where a state's interpretation of its own, unclear law would eliminate the need for a federal court to make an "unnecessary [] constitutional decision." *Traughber v. Beauchane*, 760 F.2d 673 (6th Cir. 1985). That is precisely the case here.

As explained above, the constitutionality and parameters of MCL 750.543m is currently pending before the Michigan Court of Appeals. Thus, a decision by this Court regarding the merits of Plaintiff's First Amendment claim with respect to the

constitutionality of MCL 750.543m is premature, unnecessary, and better left to the interpretation of the state judiciary.

### B. Hess's Threat Is Not Protected Speech.

Even if this Court were to address the merits of Plaintiff's First Amendment claim, it fails as a matter of law. Hess's right to freedom of speech is not absolute. *TM v. MZ*, 326 Mich. App. 227, 237 (2018). The U.S. Supreme Court has held that the government may regulate certain categories of speech consistent with constitutional considerations. *Virginia v. Black*, 538 U.S. 343, 359 (2003). This is because there is some speech that is "of such slight value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.*

Courts have consistently declined to afford First Amendment protections to "true threats" to protect individuals from "fear of violence and the disruption that fear engenders, along with the possibility that the threatened violence will occur." *Counterman v. Colorado*, 600 U.S. 66, 74, (2023) (Internal citations omitted.) To constitute a "true threat," there is no requirement that the speaker actually intend to carry out his threat. *United States v. Dodson*, 2024 WL 712494, at *5 (6th Cir. Feb. 21, 2024). Rather, the United States Supreme Court has held that the question is whether a reasonable observer would understand the communication to be "a serious expression of intent to harm." *Counterman*, 600 U.S. 66 at 79. Or, in other words,

28

whether the speaker knew "that others may regard his statement[] as 'threatening violence,'" but proceeded to utter it anyway. *Id*.

On Nov. 7, 2023, Plaintiff engaged in both protected *and* unprotected speech. Though Hess tries to convince this Court that his criminal charge stemmed from the former, objective evidence proves otherwise. Plaintiff's statements during the public comment section, while distasteful, are protected. The unprotected speech at issue in this case stems from Plaintiff's statement "hang Joe for treason." For context, on a separate occasion, Plaintiff directly told Rozell, in an agitated voice, that "treason is going to be tough." *[Ex. 5 to Resp. to Mot. for Prelim. Inj.]*

Plaintiff was not articulating a political opinion or idea, however unpopular, nor were these remarks made in jest. Courts have routinely held that similar threats of physical violence against an individual or group of individuals amounts to "true threats" and is not protected speech. *See D.J.M. ex rel P.M. v. Hanniibal Pub. Sch. Dist. No. 60,* 647 F.3d 754, 760–65 (8th Cir. 2011) (holding that a student's statements on an instant messaging platform that he desired to obtain a gun to shoot himself and others were "true threats" and not protected speech under the First Amendment); *Torres v. Clark*, 2013 WL 1409327, at *1–2 (3d Cir. 2013) (a prisoner's statement in a letter that if a correctional officer "keeps acting like he is above policy/law somebody is going to break his jaw" constituted a "true threat").

Hess argues that Howard did not consider the threat "to be a serious 'expression of an intent' to commit harm." *[ECF No. 12, PageID.76.]* If that were true, Howard would not have reported the comment to the police. Rozell similarly viewed the threat as an intent to commit harm, as evidenced by his request to increase a police presence in and around his home after the recount. And even so, expressions of anger and "bad talk" can still amount to "true threats." In *People v. Osantowski*, 274 Mich. App. 593, 596–99 (2007), *rev'd in part, appeal denied in part*, 481 Mich. 103 (2008), the defendant student expressed to another student that he had weapons at his disposal and labeled himself a "mass murderer." *Id*. at \*609. He was arrested and charged under MCL 750.543m, among other statutes, for threats of terrorism. *Id*. at \*595. The Court of Appeals affirmed that the defendant's statements were "true threats" and not constitutionally protected speech because "true threats need not include an intent for direct intimidation. [E]ven those threats not intended to be conveyed to the potential victim can be criminalized because of the state's overwhelming interest in preventing the disruption that can result from such threats." *Id*. at \*610. Thus, Plaintiff's assertion that he did not seriously intend to commit harm, and his focus on the fact that Rozell was not in the lobby when he uttered the threat, are immaterial. When considered in light of the surrounding circumstances, Hess's statement to hang Rozell during a contentious recount is not protected speech. Plaintiff's First Amendment claim should be dismissed.

## VIII.  PLAINTIFF'S EQUAL PROTECTION CLAIM LACKS MERIT.

Plaintiff argues that Defendants McDonald, Bouchard, and Peschke violated his Fourteenth Amendment right to equal protection under the law by selectively prosecuting him under MCL 750.543m on account of his political speech. *[ECF No. 23, PageID.548.]* Plaintiff's Amended Complaint fails to demonstrate that Defendants acted with a discriminatory purpose and that Defendants did not charge individuals similarly situated to him. His equal protection claim fails.

Plaintiff must satisfy a high bar to establish a selective prosecution claim because McDonald, as Oakland County Prosecutor, is entitled to a "presumption of regularity" to support her prosecutorial decisions. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Without clear evidence to the contrary, this Court should presume that McDonald properly discharged her duties regarding Hess's charge. *Id*.

To satisfy his burden of establishing an equal protection claim, Plaintiff must show that (1) he was singled out as a person belonging to an identifiable group; (2) McDonald, Bouchard and Peschke initiated the prosecution for a discriminatory purpose; and (3) the prosecution had a discriminatory effect on the group that Hess belongs to. *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). Plaintiff must demonstrate "that the administration of a criminal law is directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the

31

law." *Armstrong*, 517 U.S. at 464.The purpose requirement mandates Plaintiff to prove that the decisionmakers in his case acted with discriminatory animus, while the effect element requires Hess to prove that similarly situated individuals of a different group were not prosecuted. *Id*. Plaintiff fails to satisfy this burden.

Plaintiff alleges that he was targeted for engaging in political speech, that Defendants' actions were "selective, invidious, in bad faith, and based on impermissible considerations." *[ECF No. 23, PageID.548-49, ¶¶ 117, 121.]* Plaintiff also alleges that Defendants' actions were intended to "intimidate, oppress, and punish [Hess] and similarly situated individuals who share [Hess's] political viewpoint[]." *[ECF No. 23, PageID.549, ¶ 123.]*

First, Plaintiff fails to explain how McDonald, Bouchard, or Peschke acted with a discriminatory purpose. The general allegation that the Defendants' actions were discriminatory in violation of the Equal Protection clause is not enough. *See United States v. Hazel,* 696 F.2d 473, 475 (6th Cir.1983) ("A claim of selective prosecution can survive dismissal 'only when the motion alleges sufficient *facts* to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose'"). Second, Plaintiff fails to allege or identify individuals outside of his identifiable group were not prosecuted for the same or similar conduct.[5] The Sixth Circuit has specifically held that "it is an absolute requirement

---

[5] Plaintiff fails to even define the identifiable group.

that the plaintiff make at least a prima facie showing that similarly situated persons outside [of his] category were not prosecuted." *Coker v. Summit Cnty. Sheriff's Dep't*, 90 F. App'x 782, 790 (6th Cir. 2003) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). For this inquiry, "the appropriate comparison is between those persons subject to the classification and those persons who are similarly situated ***but for*** the classification." *Jordan v. Caruso*, 2009 WL 2960031, at *14 (E.D. Mich. June 11, 2009). In other words, "in order to make out an equal protection claim on the basis of selective enforcement, [P]laintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently." *Boone v. Spurgess,* 385 F.3d 923, 932 (6th Cir. 2004).

Attempting to meet his burden, Plaintiff alleges: (1) the Lenawee County Democratic Party posted on Facebook that individuals that view Trump as a king should be hanged; (2) protestors in Dearborn, Michigan chanted "death to America" and "death to Israel"; and (3) protestors in Oakland County held signs to calling Trump a "traitor" and, on one occasion, a sign that said "86 47." *[ECF No. 23, PageID.526-7, ¶¶ 45-48.]* Plaintiff contends that these individuals were not prosecuted for their conduct, but he was.

Even if the individuals were identified and prosecutors established probable cause, McDonald obviously cannot charge anyone in Lenawee County or Dearborn,

located in Wayne County. And with respect to Oakland County protestors, the circumstances could not be more different than those presented here. Plaintiff fails to adequately allege or identify individuals outside of his identifiable group who were not prosecuted for the same or similar conduct. Plaintiff's equal protection claim fails as a matter of law.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint in its entirety.

Respectfully submitted,

CLARK HILL PLC

Dated: June 11, 2025  By: */s/ Robert N. Dare*
          Robert N. Dare (P79207)
          Lauren M. Smith (P87377)
          500 Woodward Avenue, Suite 3500
          Detroit, MI  48226
          (313) 965-8300
          rdare@clarkhill.com
          lmsmith@clarkhill.com
          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2025 I caused the foregoing Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

*/s/Dina Griffey*
Dina Griffey
