UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW HESS,

      Plaintiff,

        v.

OAKLAND COUNTY *et al.*,

      Defendants.

Case No. 2:25-cv-10665
Hon. Gershwin A. Drain

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER [ECF No. 32] AND MOTION FOR PRELIMINARY INJUNCTION [ECF No. 12]**

On March 10, 2025, Plaintiff Andrew Hess filed the instant action against Oakland County, Oakland County Prosecutor Karen McDonald, Oakland County Director of Elections Joseph Rozell, Oakland County Sheriff Michael Bouchard, and Oakland County Sergeant Matthew Peschke. Plaintiff alleges that Defendants violated the First Amendment, Fourth Amendment, Fourteenth Amendment, Second Amendment, and Michigan state law by prosecuting him for his speech at a contentious election recount on December 15, 2023, in Oakland County, Michigan. The case against Plaintiff was ultimately dismissed without prejudice because the Michigan Court of Appeals found the statute under which Plaintiff was prosecuted—Michigan Compiled Laws § 750.543m(1)(a)—facially unconstitutional. However,

1

the Michigan Supreme Court vacated and remanded the Michigan Court of Appeals'

decision, and the Michigan Court of Appeals ultimately concluded on remand that §

750.543m(1)(a) is, in fact, facially constitutional.

Presently before the Court is Plaintiff's motion for a temporary restraining

order ("TRO") and motion for preliminary injunction. Plaintiff argues that an

injunction is necessary because there is nothing to prevent Defendant Karen

McDonald from renewing her prosecution of Plaintiff under Mich. Comp. Laws §

750.543m(1)(a) now that the Michigan courts have found the statute constitutional.

Defendant responded in opposition to both motions. The Court concludes that a

hearing will not aid in the disposition of these motions and will determine the

outcome on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

For the following reasons, Plaintiff's motion for a TRO [ECF No. 32] and

motion for a preliminary injunction [ECF No. 12] are DENIED.

## I.    BACKGROUND

### a.  *The Election Recount*

On December 15, 2023, Oakland County held an election recount at the

County Courthouse regarding Royal Oak Proposal B. ECF No. 16, PageID.220.

Royal Oak Proposal B—which passed by a "slim margin"—introduced ranked

choice voting, allowing voters to rank candidates for office rather than selecting a

single candidate. *Id.* Defendant Joseph Rozell, Oakland County's Director of

Elections, oversaw the recount, and Oakland County Sheriff's Deputies were on-site to provide security. *Id.* In addition, several members of the public attended as observers. ECF No. 12, PageID.72. Plaintiff Andrew Hess was one of those observers. *Id.*

During the event, Plaintiff was critical of the recount process and questioned the chain of custody for the ballots. *Id.* At one point, Plaintiff confronted Rozell about the seal on a ballot box that Plaintiff believed was tampered with. *See* ECF No.12-2, PageID.126–27. When Rozell explained that the broken seal was not a problem because a new seal number was added and recorded, Plaintiff responded: "Treason. Treason's going to be tough, Joe." *Id.* at PageID.127–28; Exhibit 5, Plaintiff's Video 3, 00:40–42. At some point, Plaintiff briefly left the recount room and went into the lobby. A receptionist for the County, Kaitlyn Howard, alleges that she overheard Plaintiff say "hang Joe for treason" in a private conversation with another individual in the lobby. ECF No. 12, PageID.73; ECF No. 16-3, PageID.254. Howard reported Hess's statement to Officer Lee Van Camp of the Oakland County Sheriff's Office. ECF No. 16, PageID.221.

After receiving this report, Officer Van Camp retrieved Plaintiff out of the recount room to question him in the lobby. *See generally* Exhibit 5, Plaintiff's Video 2. During questioning, Officer Van Camp stated: "So it was reported to me that somebody overheard you saying you were going to hang Mr. Rozell for treason." *Id.*

3

at 01:21–28. In response, Plaintiff slightly smirked and said "okay." *Id.* at 01:28–29.

Officer Van Camp explained that he has to "take that kind of stuff very seriously"

and make a report about it. *Id.* at 01:30–44. Plaintiff then asked Officer Van Camp

what the penalty is for treason, and Officer Van Camp responded with "hanging."

*Id.* at 01:44–48. Plaintiff stated, "so all I did was accuse him of a crime. And so, it

would be like saying if somebody murders somebody, they get to go to jail for the

rest of their life." *Id.* at 01:50–55. Officer Van Camp responded that it is "still a

threat against a county employee." *Id.* at 01:56–02:00. Ultimately, Officer Van

Camp completed the report and permitted Plaintiff to return to the recount room.

ECF No. 12, PageID.73.

Back in the recount room, Plaintiff gave an impassioned speech to the

attendees about the value of voting and the treasonous nature of cheating an election.

*See generally* Exhibit 5, Plaintiff's Video 1. Plaintiff ended his speech by saying:

"The penalty for treason? I'll let somebody else tell you what it is." *Id.* at 01:03–07.

### b. *The Prosecution*

On April 1, 2024, Defendant Karen McDonald, the Oakland County

Prosecutor, charged Plaintiff with making a terrorist threat in violation of Mich.

Comp. Laws § 750.543m(1)(a) when he made the statement, "Hang Joe for treason."

ECF No. 16, PageID.223. That statute makes it a crime to "[t]hreaten[] to commit

an act of terrorism and communicate[] the threat to any other person." Mich. Comp.

4

Laws § 750.543m(1)(a). A person convicted of violating § 750.543m is guilty of a felony and faces up to 20 years in prison and a fine up to $20,000. *Id.*(3).

At Plaintiff's preliminary evaluation, the prosecution and defense counsel questioned Rozell and Howard about the events at the election recount on December 15, 2023. Rozell testified that the recount petition at issue involved contentious allegations such as voting equipment not being certified, using voting equipment that was contrary to state law, and absentee ballots that were mailed and never received. ECF No. 12-2, PageID.112. Rozell also testified that the elections environment had become "pretty polarized" in general, noting that he had experienced "issues with challengers behaving badly at the absent voter counting board." *Id.* at PageID.113. As such, Rozell testified that the elections team requested security for the December 15 recount. *Id.* Rozell also noted that he was familiar with Plaintiff prior to December 15 because Plaintiff had confronted Rozell at a prior recount and requested that Rozell be arrested there as well. *Id.* at PageID.119.

Regarding the day in question, Rozell explained how Plaintiff told Rozell that "treason's going to be tough,"[1] and described Plaintiff as "agitated." *Id.* at PageID.128, 130. Rozell admitted that he did not personally hear Plaintiff say "hang Joe for treason" and that he was not in the lobby when Plaintiff uttered these words.

---

[1] Rozell testified that Plaintiff said, "treason is going to look very good on you." ECF No. 12-2, PageID.128. Video recording of this interaction between Plaintiff and Rozell confirms that the actual statement was "treason's going to be tough, Joe."

*Id.* at PageID.141–42. However, Rozell testified that when a deputy informed him that Plaintiff "said that he was going to hang [him]," Rozell "felt [his] heart drop," and described the situation as "very intimidating," "very scary," and nothing he had ever experienced in his professional career. *Id.* at PageID.138. Rozell testified further that he requested police patrols around his home and informed his alarm company about the possible threat to his welfare, advising the company to alert the police immediately upon suspicious activity around his home. *Id.* at PageID.138–39.

The parties also questioned Howard at the preliminary evaluation. When asked, Howard admitted that she did not perceive any imminent threat of harm when she heard Plaintiff say "hang Joe for treason." *Id.* at PageID.180. She testified that she felt the need to tell a deputy about his statement because she does not "take kindly to that kind of behavior or language." *Id.* at PageID.178.

### c.    The Kvasnicka Case

While Plaintiff's prosecution was ongoing, the Michigan Court of Appeals rendered a decision in *People v. Kvasnicka ("Kvasnicka I")*, No. 371542, 2025 WL 492496 (Mich. Ct. App. Feb. 13, 2025). In *Kvasnicka I*, the Court of Appeals discussed the constitutionality of § 750.543m(1)(a). Because the statute is "silent as to what state-of-mind the defendant must have when he 'threatens to commit an act of terrorism,'" the Court of Appeals concluded that the statute was unconstitutional under *Counterman v. Colorado*, 600 U.S. 66 (2023), which held that criminal

prosecutions for true threats must prove that the defendant had a *mens rea* of at least recklessness. *Id.* at *4. After the statute was ruled unconstitutional under *Counterman*, the charges against Plaintiff were dismissed without prejudice. ECF No. 12, PageID.65.

The *Kvasnicka I* decision was appealed, however, and the Michigan Supreme Court vacated the decision and remanded for further consideration. *People v. Kvasnicka ("Kvasnicka II")*, 18 N.W.3d 308 (Mich. 2025). The Michigan Supreme Court instructed the Michigan Court of Appeals to reevaluate the proper interpretation of § 750.543m(1)(a) in light of (1) Mich. Comp. Laws § 750.543z, which provides that a prosecuting agency shall not prosecute any person for conduct presumptively protected by the First Amendment in a way that violates any constitutional provision, and (2) the constitutional-doubt canon. *Id.* at 308–09. The Michigan Supreme Court further instructed the Michigan Court of Appeals to determine whether a limiting construction of § 750.543m(1)(a) could be adopted to address any constitutional deficiency and what that construction should be. *Id.* at 309.

On remand, the Michigan Court of Appeals found that § 750.543m(1)(a) is facially constitutional. In doing so, the Court of Appeals noted that a court can interpret a statute to have a *mens rea* element even if the statute is silent as to *mens rea. People v. Kvasnicka ("Kvasnicka III")*, No. 371542, 2025 WL 2045006, at *6

(Mich. Ct. App. July 21, 2025). Thus, under the constitutional-doubt canon, an interpretation of § 750.543m(1)(a) with a *mens rea* element that does not run afoul the Supreme Court's holding in *Counterman* was "fairly possible." *Id.* As such, the Court of Appeals held that, when prosecuting a case under § 750.543m(1)(a), a prosecutor must also prove that the defendant made the alleged threat recklessly. *Id.*

### d. The Lawsuit

On March 10, 2025, Plaintiff filed the instant lawsuit against Oakland County, Karen McDonald, Joseph Rozell, Michael Bouchard, and Matthew Peschke. ECF No. 1. Plaintiff brings claims for violation of his right to free speech under the First Amendment, malicious prosecution under the Fourth Amendment, violation of equal protection under the Fourteenth Amendment, invasion of privacy/false light under Michigan law, violation of his right to bear arms under the Second Amendment, and unlawful seizure under the Fourth Amendment. *See* ECF No. 23. Plaintiff seeks declaratory and injunctive relief along with monetary damages.

The Michigan Supreme Court rendered its *Kvasnicka II* decision later that month, on March 28, 2025. *See Kvasnicka II*, 18 N.W.2d at 308–09. Thereafter, Plaintiff filed a motion for a preliminary injunction, requesting that the Court prohibit McDonald from renewing the prosecution of Plaintiff for the statement he made at the election recount. *See* ECF No. 12. While the preliminary injunction motion was pending before the Court, the Michigan Court of Appeals rendered its

8

decision in *Kvasnicka III*, ruling definitively that § 750.543m(1)(a) does not violate the Constitution. *See Kvasnicka III*, 2025 WL 2045006, at *6. Thereafter, Plaintiff filed a motion for a TRO with notice to Defendants. *See* ECF No. 32. Plaintiff argued that the *Kvasnicka III* decision made the need for an injunction even more urgent and requested the Court immediately enter a TRO, and upon issuing the TRO, hold a hearing on the preliminary injunction motion. *Id.* at PageID.827–28, 831–32.

For both motions, Plaintiff relies solely on his First Amendment claim as the reason that he is entitled to an injunction. Specifically, Plaintiff claims that prosecution under § 750.543m(1)(a) is facially unconstitutional under *Brandenburg v. Ohio*, 395 U.S. 444 (1969), and unconstitutional as applied to him because his speech did not constitute a "true threat" under the circumstances. *Id.* at PageID.87, 92.

## II. LAW & ANALYSIS

TROs and preliminary injunctions are "extraordinary measure[s]" that have been characterized as "the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). These remedies are "never awarded as of right." *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 638 (E.D. Ky. 2021) (quoting *Munof v. Geren*, 553 U.S. 674, 690 (2008)). In determining whether to grant a TRO or preliminary injunction, a court must balance

the following four factors: (1) whether the movant has a likelihood of success on the merits, (2) whether the movant would suffer irreparable injury without the injunction, (3) whether the injunction would cause substantial harm to others, and (4) whether the injunction serves the public interest. *Bonnell*, 241 F.3d at 809.

In the context of the First Amendment, "the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). This is because the balance of the other factors is necessarily dependent on the likelihood of success determination. *See id.* For example, "it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Likewise, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)). Moreover, the government (and its citizens) would not be harmed if the government were prevented from enforcing an unconstitutional law. *See id.* However, the applicability of these considerations can only be determined once the likelihood of success on the First Amendment claim is established. *See id.* In sum, "because the questions of harm to the parties and the public interest generally cannot be addressed properly in the First Amendment context without first determining if

there is a constitutional violation, the crucial inquiry often is… whether the statute at issue is likely to be found constitutional." *Id.*

## A. Likelihood of Success on the Merits

Plaintiff argues that he is likely to succeed on his First Amendment claim because § 750.543m(1)(a) is facially unconstitutional under *Brandenburg v. Ohio*, and unconstitutional as applied to him because his speech was not a true threat. Plaintiff claims that § 750.543m(1)(a) violates *Brandenburg* because it fails to include as an element that the alleged threat is "directed to inciting or producing imminent lawless action and [] likely to produce such action." ECF No. 12, PageID.92. Further, Plaintiff claims that his statement "hang Joe for treason" was not a "true threat" unprotected by the First Amendment, but rather mere political hyperbole. ECF No. 12, PageID.86. Plaintiff highlights how the Sheriff's Deputies did not arrest him on the recount day, and even permitted him to return to the recount room to give a speech after he made the statement, as evidence that his statement could not possibly be serious enough to constitute a true threat. *Id.* at PageID.88.

In response, Defendants argue that Plaintiff's facial constitutionality argument is no longer viable after the Michigan Court of Appeals' *Kvasnicka III* decision, which found the statute facially constitutional. ECF No. 34, PageID.857. Furthermore, Defendants claim that Plaintiff's statement is a true threat, asserting

that Howard and Rozell both considered the threat serious. ECF No. 16, PageID.229–31.[2]

### a. First Amendment Principles

"The First Amendment offers sweeping protection that allows all manner of speech to enter the marketplace of ideas. This protection applies to loathsome and unpopular speech with the same force as it does to speech that is celebrated and widely accepted." *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 243 (6th Cir. 2015); *see also United States v. Alvarez*, 567 U.S. 709, 716 ("[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."). "From 1791 to the present, however, the First Amendment has permitted restrictions upon the content of speech in a few limited areas, and has never included a freedom to disregard these traditional limitations." *United States v. Stevens*, 559 U.S. 460, 468

---

[2] Defendants also argue that their entitlement to qualified immunity may be considered in determining likelihood of success on the merits, and that qualified immunity bars liability in this case. *Id.* at PageID.858–59. However, "Sixth Circuit precedent dictates that the defense of qualified immunity protects officials only from suit for monetary damages." *Mumford v. Zieba*, 4 F.3d 429, 435 (6th Cir. 1993). In this case, in addition to monetary damages, Plaintiff also seeks declaratory relief that Defendants violated his First Amendment rights and permanent injunctive relief barring Defendants from prosecuting him under § 750.543m(1)(a). ECF No. 23, PageID.554. Therefore, even presuming Defendants may be entitled to qualified immunity regarding Plaintiff's request for money damages, they still must face the merits of Plaintiff's claim. *See Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001). As such, the Court will address the merits of Plaintiff's claim here.

(2010) (cleaned up). These traditional limitations include incitement of imminent lawless action, obscenity, defamation, speech integral to criminal conduct, "fighting words," child pornography, "true threats," and "speech presenting some grave and imminent threat the government has the power to prevent." *Alvarez*, 567 U.S. at 717.

Of relevance here, "[t]rue threats are serious expressions conveying that a speaker means to commit an act of unlawful violence." *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)) (cleaned up). "The speaker need not actually intend to carry out the threat." *Black*, 538 U.S. at 359–60. Rather, "[t]he existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Counterman*, 600 U.S. at 74 (quotation marks omitted). "When the statement is understood as a true threat, all the harms that have long made threats unprotected naturally follow. True threats subject individuals to fear of violence and to the many kinds of disruption that fear engenders." *Id.* (quotation marks omitted). Although the speaker need not have a certain mental state to make his statement a true threat, the government is required to prove a *mens rea* of at least recklessness in order to prosecute a speaker for a true threat. *Id.* at 79.

### b.  Plaintiff Does Not Have a Likelihood of Success on His Facial Unconstitutionality Claim

Plaintiff first argues that § 750.543m(1)(a) is facially unconstitutional because it is inconsistent with the Supreme Court's decision in *Brandenburg v. Ohio*. ECF No. 12, PageID.91. Plaintiff is not likely to succeed on this theory.

In *Brandenburg*, the appellant was a Ku Klux Klan leader and invited a reporter to attend a cross-burning rally so that it could be televised and documented. *Brandenburg*, 395 U.S. at 445–46. The reporter attended the rally with a cameraman, and the appellant stated on camera that if the Government continued to "suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken." *Id.* at 446. The appellant further stated that the Klan would be "marching on Congress" on the Fourth of July. *Id.* The appellant was later tried and convicted under the Ohio Criminal Syndicalism Statute for making these statements. That statute proscribed advocating for the propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform. *Id.* at 444–45, 447.

The appellant argued on appeal that the Ohio Criminal Syndicalism Statute was unconstitutional under the First and Fourteenth Amendments. *Id.* at 445. Ultimately, the Supreme Court agreed. The Court held that:

> [T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law except where such advocacy is (1) directed to inciting or producing imminent lawless action and is (2) likely to incite or produce such action.

*Id.* at 447 (numbering added). Because the Ohio Criminal Syndicalism Statute criminalized mere advocacy without requiring that the advocacy be directed at inciting imminent lawless action and likely to do so, the Court concluded that it was unconstitutional. *Id.* at 448–49.

The Supreme Court's *Brandenburg* decision provided the test that courts use today to determine whether speech constitutes incitement, a category of speech that is not protected under the First Amendment. *See Bible Believers*, 805 F.3d at 246; *see also Alvarez*, 567 U.S. at 717. But in this case, incitement is not at issue. Section 750.543m(1)(a)—the statute under which Plaintiff was prosecuted—does not purport to sanction speech that constitutes incitement, but rather, speech that constitutes "true threats." *See People v. Osantowski*, 736 N.W.2d 289, 298 (Mich. Ct. App. 2007), *rev'd for resentencing*, 748 N.W.2d 799 (2008) (holding that § 750.543m prohibits "only 'true threats'" as understood under constitutional law); *see also Thames v. City of Westland*, 796 F. App'x 251, 261–62 (6th Cir. 2019) (discussing § 750.543m and the Michigan Court of Appeals' *Osantowski* decision).

True threats are conceptually distinct from incitement. While the incitement category focuses on whether the speech at issue is directed at and likely to spur imminent lawless action, *Brandenburg*, 395 U.S. at 447, the true threat category focuses on whether the speech at issue communicates a "serious expression of an intent to commit an act of unlawful violence" against a particular person or group.

*Black*, 538 U.S. at 359. In other words, incitement focuses on the effect of the speech on a broader audience, whereas true threats are personal to the speaker. The rationales for excluding these distinct categories of speech from the protection of the First Amendment are different: while incitement is excluded to prevent the immediate harm, violence, and lawlessness caused by incendiary language, *Brandenburg*, 395 U.S. at 447, true threats are excluded so that individuals may be free "from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur[.]" *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992).

As such, Plaintiff's argument that § 750.543m(1)(a) is unconstitutional because it does not contain the *Brandenburg* elements is misguided. The statute need not contain those elements because it criminalizes true threats, not incitement.

### c.  Whether Plaintiff Has a Likelihood of Success on His As-Applied Unconstitutionality Claim Is Neutral

Plaintiff next argues that it is unconstitutional to prosecute him under § 750.543m(1)(a) because his statement, "hang Joe for treason," was not a true threat. While Plaintiff has a credible argument, so do Defendants. The Court cannot conclude that Plaintiff is likely to succeed on the merits of this theory or that this factor favors Plaintiff. *See Novak v. Federspiel*, 649 F. Supp. 3d 562, 573 (E.D. Mich. 2023) ("For an unclear likelihood of success, [this] factor is neutral.").

Notably, Plaintiff claims that whether a statement constitutes a "true threat" is a legal question for the Court to determine as a matter of law. ECF No. 12, PageID.86 n.12. However, the Sixth Circuit has consistently stated that whether a statement is a "true threat" is a factual question for the jury to decide.[3] *Thames*, 796 F. App'x at 262 ("The jury determines whether a statement is a true threat."); *United States v. Hankins*, 195 F. App'x 295, 301 (6th Cir. 2006) (same); *see also United States v. Polson*, 154 F. Supp. 2d 1230, 1235 (S.D. Ohio 2001) (stating that the defendant's statement falls "well within the wide spectrum of prosecutable threat cases, and, therefore, should be submitted to the jury to determine whether the message… constitutes a 'true threat.'"); *United States v. Censke*, No. 2:08-cr-19, 2009 WL 10681232, at *6 (W.D. Mich. Apr. 29, 2009) ("It is up to the jury to decide at trial whether a communication is a true threat applying the objective standard."); *Osantowski*, 736 N.W.2d at 612 ("As an issue of fact, the determination whether a statement was a true threat is generally a question for the jury.").

---

[3] Plaintiff seeks both legal and equitable relief on his First Amendment claim. Of course, actions that *solely* seek equitable relief (such as injunctive relief) are not entitled to be heard by a jury. However, "when legal and equitable actions are tried together, the right to a jury trial in the legal action encompasses the issues common to both." *In re Lewis*, 845 F.2d 624, 629 (6th Cir. 1988). Because the factual questions for Plaintiff's legal and equitable claims overlap entirely, the Court will be bound by the jury's determination of the facts as they relate to Plaintiff's First Amendment claim when determining the scope of equitable relief that he seeks. *See id.* As such, whether Plaintiff's statement is a true threat is a jury question.

Determining whether a statement constitutes a true threat is a factually-intensive and context-driven inquiry that is "determined objectively from all the surrounding facts and circumstances." *Censke*, 2009 WL 10681232, at *6; *see also Hankins*, 195 F. App'x at 301 ("A statement's context must be considered in determining whether it is a true threat."); *United States v. Jeffries*, No. 3:10-CR-100 (Phillips), 2011 WL 13186518, at *17 (E.D. Tenn. May 24, 2011) (stating that in the context of summary judgment, the question is whether a "reasonable juror… would view the communication as a 'true threat,' having considered the content of the communication, and the context in which it was sent.").

Many contextual factors are relevant when determining if a statement is a true threat. The reaction of those who hear the statement and those against whom the statement is directed is relevant. *See Thames*, 796 F. App'x at 262 (noting that the person who heard the alleged true threat was "alarmed enough" and "sincere enough" to report it; stating that this response is "meaningful" in determining whether the statement was a true threat); *Hedrick v. W. Mich. Univ.*, No. 1:22-cv-308, 2022 WL 10301990, at *8 (W.D. Mich. Oct. 17, 2022) (discussing the reactions of those who heard the alleged "true threats"). Whether the statement has a political dimension is also highly relevant. *See Watts v. United States*, 394 U.S. 705, 708 (1969) (holding that true threats must be distinguished from mere "political hyperbole"); *Hankins*, 195 F. App'x at 301 (stating that "[t]here was no political

18

context to Mr. Hankins' statements" in its analysis of the alleged true threat); *Jeffries*, 2011 WL 13186518, at *17 (stating that a court must be mindful that there is a "profound national commitment" to the principle of open political speech about public officials). The location the statement is made, to whom the statement is uttered, and whether the statement is made in conditional or absolute terms are also important considerations. *See Watts*, 394 U.S. at 708; *Thames*, 796 F. App'x at 262; *Hankins*, 195 F. App'x at 301; *United States v. Baker*, 890 F. Supp. 1375, 1381 (E.D. Mich. 1995).

Given the factual intricacy of this case, the Court cannot conclude that Plaintiff is likely to prevail on his First Amendment claim. Both parties raise good arguments on this issue. As Plaintiff explains, the Supreme Court has stated that "[t]he language of the political arena… is often vituperative, abusive, and inexact," and may "include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts*, 394 U.S. at 708. As such, "political hyperbole" is protected, even if it is crude and offensive. *Id.* It cannot be doubted that Plaintiff's speech in this case regarded a political issue of public concern—he was voicing his anger over his belief that Rozell, a public official, may have been tampering with the votes in the recount.

However, "a person may not escape prosecution for uttering threatening language merely by combining the threatening language with issues of public

concern." *Polson*, 154 F. Supp. 2d at 1235–36 (quoting *United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993)). It also cannot be doubted that Plaintiff voiced a desire to see that Rozell is killed, a sentiment that has the potential to be highly threatening. Plaintiff points out that the deputies present at the recount allowed him to remain on the premises after he made the alleged "true threat," and even allowed him to give a speech to attendees, which arguably suggests that his statement was not perceived as truly threatening. ECF No. 12, PageID.88. On the other hand, Rozell testified at length about the fear he felt after learning of Plaintiff's statement and the precautions he took to protect himself and his home immediately thereafter. ECF No. 12-2, PageID.138–39. And while Howard admitted that she did not feel there was any threat of imminent harm after hearing Plaintiff's statement, *id.* at PageID.180, she was clearly "alarmed enough" and "sincere enough" to make a police report about the statement. *Thames*, 796 F. App'x at 262.

Moreover, Plaintiff's statement was not conditional—he said, in absolute terms, "hang Joe for treason," and made the statement at a contentious election recount where tensions were already running high. *See Watts*, 394 U.S. at 708 (finding a statement mere political hyperbole where it was "expressly conditional"). The history of the relationship between Plaintiff and Rozell was also strained and somewhat hostile. Plaintiff had attended prior recounts, had requested Rozell be arrested on prior occasions, and had accused Rozell of treason multiple times during

the recount in question. *See Censke*, 2009 WL 10681232, at *6 ("The alleged threatening statement must be viewed from the objective perspective of the recipient, which frequently involves the context of the relationship between the [speaker] and the recipient."). And while Plaintiff made his statement in a public location—which could support a finding that his statement was not a true threat—he also made the statement in a private conversation to someone else, which could support a finding that he was making a true threat. *See Hankins*, 195 F. App'x at 301 (the fact that the speaker was in his own home when he made his threatening statement and spoke it privately to a friend were relevant considerations in finding that his statement was a true threat, not protected political expression).

In sum, the factual circumstances of this case make it impossible for the Court to hold, at this juncture, that Plaintiff has a *likelihood* of success on his as-applied unconstitutionality argument. There are facts for and against all parties. While Plaintiff offers compelling arguments in his favor, Defendants offer compelling arguments in defense. The Court cannot anticipate how the jury will weigh these fact-intensive considerations. Therefore, the likelihood of success factor is neutral and weighs against granting a preliminary injunction. *See FCCI Ins. Co. v. Nicholas Cnty. Library*, No. 5:18-cv-038-JMH, 2019 WL 1048838, at *3 (E.D. Ky. Mar. 5, 2019) ("At present, both parties have made strong legal arguments indicating that

they may be correct… As a result, the likelihood of success on the merits is neutral, which weighs against granting a preliminary injunction.").

## B. The Remaining Preliminary Injunction Factors

Because the Court cannot conclude that Plaintiff has a likelihood of success on the merits, the remaining preliminary injunction factors do not favor Plaintiff. *Connection Distrib. Co.*, 154 F.3d at 288. For example, if Plaintiff's statement was protected speech, being criminally prosecuted for that speech would constitute irreparable harm. *See Elrod*, 427 U.S. at 373 (stating that the loss of First Amendment freedoms constitutes irreparable injury). But it is not clear that Plaintiff's speech was protected, such that prosecution for that speech is an irreparable harm.

Moreover, while an injunction would not harm the government if it was attempting to enforce § 750.543m(1)(a) in an unconstitutional manner, "the government presumably would be substantially harmed" if it were prevented from enforcing § 750.543m(1)(a) against a defendant who made a true threat. *Connection Distrib. Co.*, 154 F.3d at 288. Finally, while the public interest lies in "prevent[ing] the violation of a party's constitutional rights," *G & V Lounge, Inc.*, 23 F.3d at 1079, the public interest would certainly not lie in preventing the state government and Defendant McDonald from enforcing a criminal law in a constitutional manner. Indeed, "prosecutorial discretion is a fundamental part of our criminal justice system

and… should not be infringed upon without 'exceptionally clear proof' of abuse." *United States v. Edelin*, 134 F. Supp. 2d 59, 83 (D.D.C. Mar. 9, 2001) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987)).

Thus, because the likelihood of success of Plaintiff's First Amendment claim is uncertain, the remaining TRO and preliminary injunction factors are also uncertain. TROs and preliminary injunctions are "extraordinary and drastic remed[ies]" that should only be awarded on "a clear showing that the plaintiff is entitled to such relief." *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019). Plaintiff has not made that showing.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction [ECF No. 12] and motion for a temporary restraining order [ECF No. 32] are **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 29, 2025                          /s/Gershwin A. Drain
                                                 GERSHWIN A. DRAIN
                                                 United States District Judge